Jeremiah M. Hudson
Fisher Hudson Shallat
jeremiah@fisherhudson.com
ISB No. 8364
950 W. Bannock St., Suite 630
Boise, ID 83702
208-345-7000

W. James Mac Naughton, Esq.
wjm@wjmesq.com
NJSB No. 000701985
7 Fredon Marksboro Road
Newton, NJ 07860
732-213-8180
*Pro Hac Vice Application to Be Made*

*Attorneys for Plaintiff The Satanic Temple*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

_____

THE SATANIC TEMPLE

        Plaintiff

                                  Case No.:1:22-cv-411

   v.

BRAD LITTLE, in his capacity as
the Governor of Idaho; and
LAWRENCE WASDEN, in his
capacity as the Attorney General of
Idaho

        Defendants

_____

**COMPLAINT**

Plaintiff The Satanic Temple ("TST") alleges as follows:

**Parties**

1. TST is a religious association with its principal place of business in Salem, Massachusetts.

2. TST has over 1.5 million members worldwide, including over 3,500 members in Idaho.

3. TST venerates, but does not worship, the allegorical Satan described in the epic poem Paradise Lost - the defender of personal sovereignty against the dictates of religious authority.

4. Members in TST adhere to seven tenets (the "TST Tenets") commonly associated with secular humanism:

    A.   Tenet I -One should strive to act with compassion and empathy toward all creatures in accordance with reason.

    B.   Tenet II - The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.

    C.   Tenet III - One's body is inviolable, subject to one's own will alone.

    D.   Tenet IV - The freedoms of others should be respected, including the freedom to offend. To encroach upon the freedoms of another willfully and unjustly is to forgo one's own.

    E.   Tenet V - Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.

    F.   Tenet VI - People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

    G.   Tenet VII - Every tenet is a guiding principle designed to inspire nobility in action

and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.

5. TST brings this action as the representative of female TST members residing in Idaho who are involuntarily pregnant ("Involuntarily Pregnant Women").

6. The TST members wish to remain anonymous due to the risk of violent retribution from domestic terrorists motivated by animosity to proponents of abortion and non-Christian religious beliefs.

7. An Involuntarily Pregnant Woman is a woman who:

    A. Is "pregnant," as that term is defined in Idaho Code § 18-604(11) with an "unborn child" as that term is used in Idaho Code § 18-604(5); and

    B. The "unborn child" is not "viable" as that term is used Idaho Code § 18-604(15); and

    C. Became pregnant without her consent due to:

        i. The legal inability to consent to sex (other than rape or incest); and/or

        ii. The failure of her Birth Control, as hereinafter defined.

8. Consistent with TST Tenets III and V, all of the Involuntarily Pregnant Women who are TST members believe the fetal tissue they carry in their uterus – from conception until viability - is part of their body and not imbued with any humanity or existence separate and apart from that of the Involuntarily Pregnant Woman herself.

9. Consistent with the TST Tenets III and V, none of the Involuntarily Pregnant Women who are TST members wants to carry an "unborn child" as that term is used in Idaho Code § 18-604(5) in her uterus and believes she should abort that "unborn child" if given the opportunity to do so safely and legally.

10. Pregnant TST members can and do get abortions, where they are legal, to terminate an unwanted pregnancy as an exercise of their religious beliefs pursuant to the Satanic Abortion Ritual, a copy of which is attached as Exhibit A.

11. Pregnant TST members in Idaho could and did get abortions pursuant to the Satanic Abortion Ritual prior to August 25, 2022.

12. The Satanic Abortion Ritual includes meditation on and recitation of Tenet III and Tenet V.

13. Involuntarily Pregnant Women are unable to engage in the Satanic Abortion Ritual due to the criminalization of abortions in Idaho pursuant to Idaho Code § 18-622(2) (the "Criminal Abortion Statute") and Idaho Code § 18-8801 et seq. (the "Fetal Heartbeat Statute").

14. Idaho Code § 18-604(5) defines an unborn child to be "an individual organism of the species Homo sapiens from fertilization until live birth."

15. The Criminal Abortion Statute makes the act of aborting an unborn child a crime except in cases to protect the life of the mother or reported rape or incest.  Idaho Code §§ 18-622(3)(a)(ii) and (b)(ii).  An unborn child who cannot be lawfully aborted is referred to herein as a Protected Unborn Child.

16. The Fetal Heartbeat Statute makes the act of aborting a Protected Unborn Child a crime when "a fetal heartbeat has been detected." Idaho Code § 18-8804(1).

17. Idaho Code § 18-8802(1) states the legislative finding that "[t]he life of each human being begins at fertilization, and preborn children have interests in life, health, and well-being that should be protected."

18. Idaho Code § 18-8802(8) states the legislative finding that "the state of Idaho has a compelling interest in protecting the life of a preborn child at all stages of its development,

including after the preborn child has a detectable heartbeat, which signals rhythmically and without pause the presence of a precious and unique life, one that is independent and distinct from the mother's and one that is also worthy of our utmost protection."

19. Defendant Brad Little is the Governor of Idaho with responsibility for enforcing the Criminal Abortion Statute and the Fetal Heartbeat Statute (collectively the "Idaho Abortion Bans"). Governor Little is sued in his official capacity as Governor.

20. Defendant Lawrence Wasden is the Attorney General of Idaho with responsibility for enforcing the Idaho Abortion Bans. Attorney General Wasden is sued in his official capacity as Attorney General.

21. Defendants act under color of state law in violation of 42 U.S.C. § 1983 when they enforce the Idaho Abortion Bans against TST members who are Involuntarily Pregnant Women in deprivation of their rights under the U.S. Constitution.

## Jurisdiction and Venue

22. Count One seeks injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the takings clause of the Fifth Amendment as applied to Idaho pursuant to the Fourteenth Amendment.

23. Count Two seeks injunctive relief pursuant to the Thirteenth Amendment prohibition of involuntary servitude, which is self-executing on the states.

24. Count Three seeks injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the equal protection clause of the Fourteenth Amendment.

25. The Court has jurisdiction to decide Counts One, Two and Three pursuant to 28 USC § 1331 because the resolution of Plaintiff's claims presents questions of federal law.

26. Count Four seeks injunctive relief pursuant to Free Exercise of Religion Protection

Act ("FERPA"), Idaho Code § 73-401 et seq., for violation of the right of TST members in Idaho to partake in the Satanic Abortion Ritual.

27. The Court has jurisdiction to decide Count Four pursuant to 28 U.S.C. § 1367 because the claims made in Count Four are so related to claims made in Counts One, Two and Three that they form part of the same case or controversy under Article III of the U.S. Constitution.

**Zygotes and Blastocysts**

28. The most common method for creating a "human being," as that term is used in the Idaho Abortion Bans, starts with the deposit of a man's sperm inside a woman's vagina during the course of sex.

29. Once the man's sperm is deposited in the woman's vagina, it travels through her uterus and into her fallopian tubes where it may encounter an egg produced by her ovaries.

30. When a single sperm fuses with or fertilizes the woman's egg, the resulting cell is known as a zygote. The fertilization process takes about 24 hours and typically occurs about two (2) weeks after the end of the woman's last menstrual cycle.  The end of the menstrual cycle prior to fertilization is the starting point for measuring the course of a pregnancy commonly known as the estimated gestational age ("EGA").

31. The zygote contains all of the genetic information (DNA) needed to become an adult human being. Half of the genetic information comes from the woman's egg and half from the man's sperm.

32. The zygote is a "human being," as that term is used in the Idaho Abortion Bans.

33. None of the Involuntarily Pregnant Women were aware of or consented to the creation of a zygote in her fallopian tubes at the time of fertilization.

34. The Idaho Abortion Bans do not apply to the destruction of a zygote because "'[a]bortion' does not mean the use of an intrauterine device or birth control pill to inhibit or prevent . . . the implantation of a fertilized ovum within the uterus."  Idaho Code §§ 18-604(1) and 18-8801(1).

35. After its creation, a zygote travels down the fallopian tube and divides to form a ball of cells known as a blastocyst.

36. A blastocyst is a "human being," as that term is used in the Idaho Abortion Bans.

37. The blastocyst reaches the uterus around five days after fertilization or three (3) weeks EGA. During this period, the blastocyst occupies empty space inside the fallopian tube or uterus.

38. The Idaho Abortion Bans do not apply to the destruction of a blastocyst while it occupies empty space in the fallopian tube or uterus.

39. Between six (6) and eleven (11) days after fertilization or three (3) to four (4) weeks EGA, the blastocyst implants into and occupies a layer of tissue in the uterus commonly known as the endometrium.

40. Upon implantation of the blastocyst into the uterus, the removal of the implanted blastocyst from the uterus is defined as an abortion in the Idaho Abortion Bans.

41. None of the Involuntarily Pregnant Women were aware of or consented to the implantation of a blastocyst into their uterus at the time it occurred.

42. Prior to implantation in the endometrium, the zygote and blastocyst derive nutrients from the woman's egg.

43. Once a blastocyst is implanted into and occupies the endometrium, it forms the cells necessary for a placenta and the development of bodily organs, e.g., heart, lungs, brain, etc.  This

stage is known as the embryo.[1]

44. An embryo is a "human being," as that term is used in the Idaho Abortion Bans.

45.  The removal of an embryo from the uterus is defined as an abortion in the Idaho Abortion Bans.

46. An embryo is entirely dependent on the woman whose uterus it occupies for all of its oxygen and other nutrients, as well as physical protection until it becomes a viable fetus.

47. A pregnant woman's body produces the hormone progesterone, which is necessary for the endometrium to retain and nurture an embryo.  If there is insufficient progesterone, the uterus will eject the embryo, i.e., miscarry, causing the death of the embryo.

48. During the first ten (10) weeks EGA, progesterone is produced by the Corpus Lutem, a cyst on the woman's ovaries. The embryo's placenta thereafter produces progesterone.

49. Between five (5) to ten (10) weeks EGA, the embryo has developed to the point of becoming a fetus and remains attached to the endometrium.

50. A fetus is a "human being" as that term is used on the Idaho Abortion Bans.

51. The removal of a fetus from the uterus is defined as an abortion in the Idaho Abortion Bans.

52. A fetus is entirely dependent on the woman whose uterus it occupies for all of its oxygen and other nutrients, as well as physical protection until it becomes viable.

**Gestational Surrogacy**

53. Since the mid-1980's, zygotes, blastocysts, and embryos have also been created outside a woman's body using in vitro fertilization ("IVF").  The father provides the sperm in a

---

[1] The word "embryo" is also commonly used to describe both the zygote and blastocyst.  For purposes of this action, Plaintiff refers to an "embryo" as the fetal development stage between blastocyst and fetus.

laboratory setting and the mother provides the egg in a laboratory setting.  The sperm fertilizes the egg in a laboratory setting creating a zygote.  The zygote develops into a blastocyst or embryo outside a woman's body in a laboratory setting.

54. The blastocyst or embryo created outside the woman's body using IVF is then surgically inserted into the empty space in a woman's uterus with the expectation it will implant in her endometrium.  This process is commonly known as gestational surrogacy.

55. Gestational surrogacy occurs when one woman provides the egg for fertilization, and another woman provides the use of her uterus for the incubation of the blastocyst or embryo into a viable child.

56. Gestational surrogacy is legal in Idaho and routinely accomplished using a contract binding on the participants.  The woman who provides the use of her uterus for the incubation of the blastocyst or embryo created in a laboratory into a viable fetus is commonly known as a gestational carrier.

57. Gestational carriers in Idaho are routinely paid significant sums of money for providing the use of their uterus to incubate a blastocyst or embryo created by IVF into a viable fetus.

58. The only economic use for a uterus is being a gestational carrier.

59. An Involuntarily Pregnant Woman cannot be a gestational carrier because her uterus is already in use.

**Birth Control**

60. The Involuntarily Pregnant Women used a variety of methods of contraception to avoid pregnancy ("Birth Control").

61. Each of the Involuntarily Pregnant Women reasonably believed the Birth Control she

used would be effective.

62. The Birth Control used by Involuntarily Pregnant Women failed and they became pregnant without their consent.

**Count One:**

**The Idaho Abortion Bans Unconstitutionally Take the Property
of Involuntarily Pregnant Women Without Just Compensation.**

63. Plaintiff repeats and realleges ¶¶ 1 to 62.

64. The United States Supreme Court has identified that the term "property," as it applies to the Fifth Amendment of the United States Constitution, to "denote(s) the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." *U.S. v. General Motors Corporation*, 65 S.Ct. 357, 359, 323 U.S. 373, 378 (U.S. 1945); *See also Newman v. Sathyavaglswaran*, 287 F.3d 786, 798 (C.A.9 (Cal.),2002).

65. The uterus of an Involuntarily Pregnant Woman is a physical thing in which she has property rights, including without limitation, the property right to:

    A. Have her uterus removed for any purpose, including without limitation, changing her sex; or

    B. Rent it out to a third party as a gestational carrier; or

    C. Retain any blastocyst, embryo, or nonviable fetus in her uterus; or

    D. Exclude any blastocyst, embryo, or nonviable fetus from her uterus;

    E. Remove any blastocyst, embryo, or nonviable fetus from her uterus.

66. The property right of an Involuntarily Pregnant Woman to exclude or remove a Protected Unborn Child from her uterus cannot be taken by the State of Idaho without just compensation pursuant to the Takings Clause of the Fifth Amendment to the U.S. Constitution.

67. The property right to exclude or remove a Protected Unborn Child from a woman's

uterus has substantial commercial value as established by over twenty-five years of experience with gestational surrogacy in Idaho.

68. The Idaho Abortion Bans make the exclusion or removal of a Protected Child from the uterus of an Involuntarily Pregnant Woman a crime.

69. The Idaho Abortion Bans cause a taking of the property rights of an Involuntarily Pregnant Woman by preventing her from exercising her property rights to exclude or remove a Protected Unborn Child from her uterus.

70. The Idaho Abortion Bans fail to provide just compensation to an Involuntarily Pregnant Woman for the taking of her property rights in her uterus.

71. There is no procedure available under Idaho law for an Involuntarily Pregnant Woman to obtain just compensation for the taking of her property rights in her uterus by the Idaho Abortion Bans.

72. The Idaho Abortion Bans are unconstitutional as applied to Involuntarily Pregnant Women under the takings clause of the Fifth Amendment and the Fourteenth Amendment.

### Count Two:

### The Idaho Abortion Bans Subject Involuntarily Pregnant Women to Involuntary Servitude in Violation of the Thirteenth Amendment.

73. Plaintiff repeats and realleges ¶¶ 1 to 72.

74. The term "involuntary servitude" means "the control of the labor and services of one [person] for the benefit of another, and the absence of a legal right to the disposal of his [or her] own person, property, and services." *Clyatt v. U.S.*, 25 S.Ct. 429, 431, 197 U.S. 207, 218 (U.S. 1905).

75. Under the Idaho Abortion Bans, the State of Idaho requires each Involuntarily Pregnant Woman to use her own person to provide the Protected Unborn Child with the

following services, among others:

    A.  Hormones, including but not limited to progesterone.

    B.  Oxygen.

    C.  Nutrients.

    D.  Antibodies.

    E.  Body heat.

    F.  Protection from external shocks and intrusions.

76. The Idaho Abortion Bans cause each Involuntarily Pregnant Woman to provide the services necessary to sustain the life of a Protected Unborn Child that occupies and uses her uterus.

77. The Idaho Abortion Bans provide no compensation or consideration to an Involuntarily Pregnant Woman for providing the services necessary to sustain the life of a Protected Unborn Child that occupies and uses her uterus.

78. The penalties set forth in the Idaho Abortion Bans constitute legal coercion. Those services have a substantial commercial value in Idaho as established by over twenty-five years of experience with gestational surrogacy.

79. The Idaho Abortion Bans are unconstitutional as applied to the Involuntarily Pregnant Women because they are put into a condition of involuntary servitude in violation of the Thirteenth Amendment.

### Count Three:

### The Idaho Abortion Bans Unconstitutionally Discriminate Between Women Who Become Pregnant by Accident and Those Who Claim They Are Pregnant by Rape or Incest

80. Plaintiff repeats and realleges ¶¶ 1 to 79.

81. All women have the fundamental right to use contraception and engage in sex just for the pleasure and intimacy it brings and without any purpose or intent to become pregnant ("Protected Sex").

82. Involuntarily Pregnant Women engaged in Protected Sex but became pregnant without their consent due to the failure of their Birth Control.

83. The Idaho Abortion Bans impose criminal penalties on Involuntarily Pregnant Women who get an abortion, notwithstanding their lack of consent to becoming pregnant. Idaho Code § 18-606(2).

84. Idaho Code § 18-8802(1) states the legislative finding that "[t]he life of each human being begins at fertilization, and preborn children have interests in life, health, and well-being that should be protected."

85. Idaho Code § 18-8802(8) states the legislative finding that "the state of Idaho has a compelling interest in protecting the life of a preborn child at all stages of its development, including after the preborn child has a detectable heartbeat, which signals rhythmically and without pause the presence of a precious and unique life, one that is independent and distinct from the mother's and one that is also worthy of our utmost protection."

86. The legislative findings in Idaho Code § 18-8802(1) and Idaho Code  § 18-8802(8) are pretext designed to effect discrimination against women who engage in sex just for the pleasure and intimacy it brings and without any purpose or intent to become pregnant.

87. The Idaho Abortion Bans do not apply to a pregnant woman who reports an act of rape or incest to a law enforcement agency.  Idaho Code §§ 18-622(3)(b)(ii) and 18-8804(1)(a). The Idaho Abortion Bans intentionally discriminate between two different classes of women who are pregnant without their consent – women who are pregnant by accident, women who are

pregnant by rape.

88. This discrimination infringes upon the fundamental right of Involuntarily Pregnant Women to engage in Protected Sex because they are forced to pay the physical and financial costs of being pregnant without their consent while women who are impregnated by rape are not.

89. There is no compelling state interest served by this discrimination.

90. Whatever state interest this discrimination purports to serve can be accomplished by means less intrusive on the fundamental right of Involuntarily Pregnant Women to engage in Protected Sex.

91. The Idaho Abortion Bans violate the equal protection clause of the Fourteenth Amendment.

### Count Four:

**The Idaho Abortion Bans Violate the Idaho Exercise of Religious Freedom Act Because They Make the Exercise of the Satanic Abortion Ritual a Crime.**

92. Plaintiff repeats and realleges ¶¶ 1 to 91.

93. Members of TST hold the religious belief that a zygote, blastocyst, embryo, and nonviable fetus are a part of a woman's body and not imbued with an existence, humanity, or spiritual life separate and apart from the mother. This belief is grounded in TST Tenet V that beliefs should conform to one's best understanding of scientific facts.

94. Members of TST hold the religious belief that an unwanted zygote, blastocyst, embryo, or nonviable fetus should be removed from the body of a pregnant woman. This belief is grounded in TST Tenet III that a woman's body is inviolable, subject to her own will alone.

95. When a member of TST has an unwanted pregnancy, she exercises her religious beliefs as expressions of Tenets III and V by engaging in the Satanic Abortion Ritual.

96. The Idaho Abortion Bans make the exercise of the Satanic Abortion Ritual a crime

and effectively prohibits it.

97. There is no compelling state interest served by banning the Satanic Abortion Ritual.

98. There are less restrictive means of furthering the state's asserted interests served by the Idaho Abortion Bans than banning the Satanic Abortion Ritual.

99. The Idaho Abortion Bans violates the Idaho Exercise of Religious Freedom Act, Idaho Code § 73-401 et seq.

## COSTS AND ATTORNEY FEES

Plaintiffs' claims arise from violations of 42 U.S.C. § 1983.  As an action to enforce this provision and vindicate a violation of civil rights, Plaintiff is entitled to an award of reasonable costs of suit and attorney fees in an amount deemed reasonable by this Court pursuant to 42 U.S.C. § 1988 in the event it is the prevailing party.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:**

a. Entry of an order permanently enjoining Defendants from enforcing the Idaho Abortion Bans against the Involuntarily Pregnant Women who are members of TST or anyone who provides such an Involuntarily Pregnant Woman with an abortion.

b. For costs of suit, including reasonable attorneys' fees.

c. For such other and further relief as this Court deems just and equitable.

//

//

//

//

//

DATED: September 29, 2022

_Jeremiah M. Hudson_
Jeremiah M. Hudson
Fisher Hudson Shallat
950 W. Bannock St.
Suite 630,
Boise, ID 83702
jeremiah@fisherhudson.com
208-345-7000
_Attorney for Plaintiff The Satanic Temple_


_W. James Mac Naughton_
W. James Mac Naughton, Esq.
7 Fredon Marksboro Road
Newton, NJ 07860
wjm@wjmesq.com
732-213-8180
_Attorney for Plaintiff The Satanic Temple_
**Pro Hac Vice Application to Be Made**

**EXHIBIT A**

# SATANIC ABORTION RITUAL

The Satanic Abortion Ritual is a destruction ritual that serves as a protective rite. Its purpose is to cast off notions of guilt, shame, and mental discomfort that a patient may be experiencing due to choosing to have a medically safe and legal abortion.

Even the most confident and unapologetic individual can experience uncomfortable feelings and anxiety for choosing to terminate their pregnancy. Laws in many states that impose waiting periods and state-mandated counseling can exacerbate these feelings, as can social condemnation and outright harassment by those who oppose abortion.



Misinformation about abortion and guilt for pursuing that option can be a lot to handle. It can be exhausting and frustrating to try to shrug off and dismiss internal and external pressures, especially those driven by religious convictions that disregard the beliefs and freedoms of others. Even when one recognizes that these criticisms are invalid, they can make an already troubling time even harder.

This ritual is intended to alleviate some of these stressors and empower the patient to be guided by the Third and Fifth Tenets when pursuing their decision.

The purpose of the ritual is not to persuade someone to have an abortion if they are undecided. Instead, the ritual serves to assist in confirming their decision and to ward off the effects of unjust persecution, which can cause one to stray from the paths of scientific reasoning and free will that TST members strive to embody.

# ABOUT THE RITUAL                    PREPARATIONS

TST's abortion ritual can be performed to address definable concerns or to overcome unproductive feelings.

The ritual, which includes the abortion itself, spans the entirety of the pregnancy termination procedure. There are steps to be performed before, during, and after the medical or surgical abortion.

Because rituals are deeply personal to those enacting them, there are variations in how it may be performed. The ritual can be personalized based on personal preferences and availability of materials. There is no need to purchase anything special or to adhere to every word. What is essential is the spirit and general intent.

One can also perform their favorite destruction ritual to target any of the unwanted feelings incited by adversity faced as a consequence of choosing to have an abortion. Feel free to take or leave whatever you wish from this one to build your own.

Before performing the ritual, you may choose to review the science about the safety and reality of abortion and the debunked claims from those who oppose abortion. You may also choose to read stories or listen to podcasts about people who made great sacrifices in the struggle to establish the reproductive rights we have today. These stories can be inspirational and may subdue stigmas you might feel from those who oppose abortion.

Your ability to choose to terminate a pregnancy is consistent with the ideals of liberty and freedom. Be proud of pursuing what you want for your life despite opposition.

## IMPLEMENTS

- A quiet space where you feel comfortable
- Something that allows you to see your reflection
- A copy of The Satanic Temple's third and fifth tenets and personal affirmation

# TENETS AND AFFIRMATIONS

## Tenet III
*One's body is inviolable, subject
to one's own will alone.*

## Tenet V
*Beliefs should conform to one's best
scientific understanding of the world.
One should take care never to distort
scientific facts to fit one's beliefs.*

## Personal Affirmation
*By my body, my blood
By my will, it is done.*



# PROCEDURES

**For medical abortions:**
Immediately before taking the medication(s) to terminate your pregnancy, look at your reflection to be reminded of your personhood and responsibility to yourself. Focus on your intent, take deep breaths, and make yourself comfortable. When ready, read the Third Tenet aloud to begin the ritual. After swallowing the medication(s), take another deep breath and recite the Fifth Tenet. After you have passed the embryo, return to your reflection, and recite the personal affirmation. Feel the doubts dissipating and your confidence growing as you have just undertaken a decision that affirms your autonomy and free will. The religious abortion ritual is now complete.

**For surgical abortions:**
Immediately before receiving any anesthetic or sedation, look at your reflection to be reminded of your personhood and responsibility to yourself. Focus on your intent, take deep breaths, and make yourself comfortable. When you are ready, say the Third Tenet aloud. The surgery can now begin. During the operation, take another deep breath and recite the Fifth Tenet. Immediately after the surgery, return to your reflection and recite the personal affirmation. Feel the doubts dissipating and your confidence growing as you have just undertaken a decision that affirms your autonomy and free will. The religious abortion ritual is now complete.

