LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN
Chief of Civil Litigation

BRIAN V. CHURCH, ISB #9391
DAYTON P. REED, ISB #10775
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
brian.church@ag.idaho.gov
dayton.reed@ag.idaho.gov

*Attorneys for Defendants*

## UNITED STATE DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| THE SATANIC TEMPLE,<br><br>　　Plaintiff,<br><br>v.<br><br>BRAD LITTLE, in his capacity as the Governor of Idaho; and LAWRENCE WASDEN, in his capacity as the Attorney General of Idaho,<br><br>　　Defendants. | Case No. 1:22-cv-411-REP<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

　　The blatant, but unstated goal of the Satanic Temple's lawsuit is to recognize a federal constitutional right to abortion. Yet the U.S. Constitution "does not confer a right to abortion." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2279 (2022). Instead, the U.S. Supreme Court recognized that it is up to the states and their representatives to regulate abortion. The Satanic Temple's backdoor attempt to circumvent the holding in *Dobbs* through a takings claim, an involuntary servitude claim, and an Equal Protection Clause claim must fail. Abortion regulations are not a Fifth Amendment taking. Pregnancy is not Thirteenth Amendment

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 1

involuntary servitude. And providing an exception to allow rape victims to obtain an abortion does not violate the Fourteenth Amendment's Equal Protection Clause. Not only are The Satanic Temple's federal law claims legally meritless, but the Court also lacks subject matter jurisdiction. Likewise, The Satanic Temple's state law claim has been brought against two defendants with Eleventh Amendment immunity. The Satanic Temple's claims against Governor Brad Little and Attorney General Lawrence Wasden must be dismissed.

## LEGAL STANDARD

A motion to dismiss based upon a defendant's Eleventh Amendment or sovereign immunity may be brought under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017). A motion to dismiss based upon a plaintiff's lack of Article III standing is properly brought under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

A motion to dismiss under Rule 12(b)(6) may seek dismissal based on "'the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). "A complaint must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citations and internal quotation marks omitted).

## DISCUSSION

**I.    The Satanic Temple's Complaint fails to show that the Court has subject matter jurisdiction.**

**A.    The Satanic Temple lacks associational standing under Article III.**

The Satanic Temple is not suing on behalf of itself, but instead alleges it is suing "as the representative of" The Satanic Temple members who wish to remain anonymous. Dkt. 1 ("Compl.") ¶¶ 5-6. It says this even though such members could have sought to bring suit anonymously. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000). Yet The Satanic Temple has failed to allege that even one of its members has standing. As

such, it has not met the requirements of representational standing or demonstrated that the interests it seeks to vindicate are germane to its purpose.

Representational standing by an association has three elements: (1) at least one of the members would have standing to sue in her own right; (2) the interests the suit seeks to vindicate are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. *Idaho State Univ. Fac. Ass'n for the Pres. of the First Amend. v. Idaho State Univ.*, 857 F. Supp. 2d 1055, 1060 (D. Idaho 2012). An individual member has Article III standing if: (1) she has suffered an injury in fact—an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 1060–61 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

    1.    <u>By failing to allege that even one of its members has been injured, The Satanic Temple has failed to establish standing to pursue its claims</u>.

The Satanic Temple's Complaint does not allege that a single member has suffered an injury due to the challenged statutes. Without alleging facts specific to any particular member, The Satanic Temple cannot show associational standing. It cannot show that a member suffered a concrete injury in fact, that this injury was causally connected to the challenged statutes, or that the injury would be redressed by a favorable decision. *See id.*

Instead, Defendants and the Court are left to speculate as to what hypothetical injury might happen to some hypothetical—or perhaps non-existent—member of The Satanic Temple, with no way to test the veracity of The Satanic Temple's claims as to an actual person. The Satanic Temple should be required to identify a specific member (even if it never reveals the member's true name to the public) and provide sufficient allegations as to that member to demonstrate that she would have standing to bring a claim herself, so that Defendants may test the veracity of her allegations. *See WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148,

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 3

1154–56 (9th Cir. 2015). Until then, The Satanic Temple's Complaint must be dismissed for lack of Article III standing.

    2.    <u>The challenged statutes are only enforceable against persons performing or attempting to perform abortions</u>.

Under the challenged statutes, only persons performing or attempting to perform abortions are subject to criminal prosecution, and only healthcare or medical professionals are subject to licensing penalties or a civil cause of action. *See* Idaho Code §§ 18-622(2), 18-8805, and 18-8807. The Satanic Temple does not claim to sue on behalf of the persons performing abortions. *See* Compl. ¶¶ 5-6. It thus lacks standing to challenge these laws.

    3.    <u>The federal law claims do not involve The Satanic Temple's abortion ritual and are not germane to its purpose</u>.

The Satanic Temple's interest in this suit is purportedly to ensure that its members can practice its abortion ritual. *See* Compl. ¶¶ 10–13 and Exhibit A. But the abortion ritual is not even mentioned in the taking, involuntary servitude, and equal protection claims. *See id*. ¶¶ 63–91. Those claims instead seek to promote interests in alleged property rights (*id*. ¶ 66), compensation for services (*id*. ¶ 77), and an alleged "fundamental right to use contraception and engage in sex just for the pleasure and intimacy it brings" (*id*. ¶ 81).

Associational standing requires that the interests the suit seeks to vindicate are germane to the organization's purpose. *Idaho State Univ.*, 857 F. Supp. 2d at 1060. The Satanic Temple has not alleged that its purpose as an organization is to preserve property rights, ensure compensation for services, or promote non-procreative sex. Its first three claims could—and should—be brought by individuals who are personally harmed in these various ways, rather than by an organization that only alleges an interest in preserving its abortion ritual.

    **B.**    **Defendant Governor Little, sued in his official capacity, has Eleventh Amendment or sovereign immunity.**

The Satanic Temple has sued Governor Little in his official capacity. Compl. ¶ 19. Its only allegation relating to why it sued Governor Little is that he has "responsibility for enforcing" Idaho Code § 18-622 and the Fetal Heartbeat Preborn Child Protection Act ("Fetal

Heartbeat Act"). *Id.* The Satanic Temple offers no legal citation for this assertion. It may be that the Satanic Temple refers to the generic requirement of the Idaho Constitution that the Governor "see that the laws are faithfully executed." Idaho Const. art. IV, § 5. This is insufficient to avoid the immunity that cloaks Governor Little from suit.

A suit against a state official in his official capacity is functionally a suit against the state. *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). The Eleventh Amendment protects states and state instrumentalities from suit in federal court. *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018). Although there is the *Ex parte Young* exception, that exception requires that the official be a proper defendant. To be a proper defendant under *Ex parte Young*, a state official must have a direct connection to the enforcement of the act; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit. *Animal Legal Def. Fund v. Otter*, 44 F. Supp. 3d 1009, 1016 (D. Idaho 2014) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908); *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)); *accord Ass'n des Eleveur de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) ("Governor Brown is entitled to Eleventh Amendment immunity because his only connection to § 25982 is his general duty to enforce California law.").

As in *Animal Legal Defense Fund*, Governor Little's "general broad powers to enforce or execute the laws of a state" "are not sufficient to make the officer a proper party defendant." *Id.* at 1017 (citations omitted). Even a ministerial duty, if one existed here, would not make the Governor a proper defendant. *Id.* Nor does Governor's Little's authority under Idaho Code § 67-802 to request the Attorney General to assist a county prosecutor in the discharge of his or her duties make Governor Little a valid defendant for *Ex parte Young* purposes. *Id.* The Complaint must be dismissed against Governor Little in its entirety.

/ / /

/ / /

    **C.**    **The Satanic Temple lacks standing to challenge to the criminal provision of the Fetal Heartbeat Act because it cannot satisfy the Article III injury-in-fact requirement.**

The Satanic Temple includes in its challenge the criminal provisions of the Fetal Heartbeat Act, found in Idaho Code § 18-8805. *See* Compl. ¶ 13. But the criminal provisions in Idaho Code § 18-8805 have been superseded by the criminal provisions in Idaho Code § 18-622, except for a very narrow subset of abortions performed in a Medicare-participating emergency department. *See* Idaho Code § 18-8805(4); *United States v. Idaho*, No. 1:22-cv-00329-BLW, 2022 WL 3692618, at *15 (D. Idaho Aug. 24, 2022). No allegation in The Satanic Temple's Complaint suggests it seeks to address that narrow subset. Thus, any challenge to the criminal provisions of the Fetal Heartbeat Act presented a dead controversy when this action was commenced because Idaho Code § 18-622 became enforceable on August 25, 2022. The Satanic Temple thus lacks standing to challenge Idaho Code § 18-8805. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000).

**II.**    **The Satanic Temple's claims under federal law are not legally viable.**

    **A.**    **The takings claim must be dismissed.**

        1.    <u>Because members of The Satanic Temple can seek compensation in state court, their equitable claim must be dismissed</u>.

The Satanic Temple's takings claim seeks injunctive relief. But where a state remedy exists to provide just compensation for a taking, equitable relief is not available. *Knick v. Twp. Of Scott, Pa.,* 139 S. Ct. 2162, 2176–77, 2179 (2019). Idaho law provides a compensatory remedy through an inverse condemnation action. *See KMST, LLC v. Cnty. of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003) (citing *McQuillen v. City of Ammon*, 113 Idaho 719, 747 P.2d 741 (1987)). *See also* Idaho Const. art. I, § 14. Therefore, even if a member of The Satanic Temple had stated a claim for a taking under the Fifth Amendment and had satisfied the court of its jurisdiction—and no member has—the member is free to pursue the novel theory that the Takings Clause entitles them to compensation for being unable to abort an unborn child in state

court. This remedy's existence precludes The Satanic Temple from seeking an injunction under a taking theory.[1] Its takings claim should be dismissed.

### 2. Because The Satanic Temple has failed to identify a state-law-created property interest, its takings claim must be dismissed.

A takings claim requires The Satanic Temple to show that a property interest exists and that the expropriation of that interest constitutes a Fifth Amendment "taking" requiring compensation. *Vandevere v. Lloyd*, 644 F.3d 957, 963 (9th Cir. 2011). Here, The Satanic Temple's claim at its core is that Idaho law removes from "involuntarily pregnant women" the right to have an abortion—but, of course, there is no state law right to abortion in Idaho. Defendants address this point in further detail below.

The Satanic Temple defines the relevant property interest as "property rights to exclude or remove a Protected Unborn Child from her uterus." Compl. ¶ 69. There is no such right under federal law. *See Dobbs*, 142 S. Ct. at 2279. And this is not a right recognized under state law. In fact, Idaho law emphatically refutes that such an interest exists. Under Idaho law, "The life of each human being begins at fertilization, and preborn children have interests in life, health, and well-being that should be protected." Idaho Code § 18–8802(1). To that end, Idaho law declares that it is "the public policy of this state that all state statutes, rules and constitutional provisions shall be interpreted to prefer, by all legal means, live childbirth over abortion." Idaho Code § 18–601. Thus, property rights in Idaho, like other legal rules, must be interpreted to prefer live childbirth, rather than to endow a property interest in "removing"—aborting—a child from a woman's body. Idaho law does not recognize a right to abortion even when dressed up as a property interest. Without a property interest, the takings claim fails at the first stage, and must be dismissed.

---

[1] The nature of this remedy and the situation-specific facts needed to prove a claim for inverse condemnation require the participation of the individuals who assert it in litigation. This further undermines The Satanic Temple's associational standing. *Idaho State Univ.*, 857 F. Supp. 2d at 1060 (explaining that association standing requires that neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit).

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 7

       3.    <u>The takings claim is simply a repackaged assertion that there is a federal constitutional right to abortion</u>.

The United States Constitution does not recognize a right to abortion, no matter how it is characterized. The Satanic Temple's attempt to pass off abortion as a "property right," Compl. ¶¶ 65–69, is simply an attempt to disguise an asserted 'fundamental right to abortion' that has been soundly rejected. "[T]he Constitution does not confer a right to abortion." *Dobbs*, 142 S. Ct. at 2279. Abortion is not a fundamental right, an equal protection right, or a property right—it is not a constitutional right. Abortion is a moral question within the purview of the Idaho Legislature to research, debate, balance, and regulate. *Id.* at 2284. The Satanic Temple's members' recourse, if they disagree with Idaho's policy on abortion, is at the ballot box.

       4.    <u>Even if the Court considers various theories of taking, The Satanic Temple has failed to establish a viable claim for relief</u>.

The Satanic Temple cannot show that the expropriation of a (non-existent) property interest in abortion constitutes a Fifth Amendment "taking" requiring compensation. *Vandevere*, 644 F.3d at 963. It does not allege that the challenged statutes constitute a "classic taking," in which "the 'government directly appropriates private property or ousts the owner from his domain.'" *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (9th Cir. 2020) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). Instead, the Satanic Temple argues that the challenged statutes prevent its members from exercising an asserted property right. Compl. ¶¶ 67–69. This allegation is properly categorized as a regulatory taking, where the Satanic Temple alleges that a regulation "goes too far" such that "it will be recognized as a taking." *Bridge Aina Le'a, LLC*, 950 F.3d at 625 (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S. Ct. 158, 67 L. Ed. 322 (1922)). There are three types of regulatory takings: two *per se* takings categories—*Lucas* and *Loretto*—and a third category, *Penn Central* takings. *Id*. The Complaint fails to allege that the challenged statutes constitute any of these.

A *Lucas* taking occurs when a regulation completely deprives an owner of all economically beneficial use of her property. *Id.* at 626 (citing *Lingle*, 544 U.S. at 538). The Satanic Temple has made no allegation that the challenged statutes deprive its members of *all*

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 8

economically beneficial use of their respective uteruses. Pregnancy is temporary. To the extent that one of its members desires to become a surrogate for profit—and again, The Satanic Temple has failed to establish that any of its members have suffered an unwanted pregnancy, let alone that a member suffering an unwanted pregnancy wants to terminate that pregnancy in order to engage in the financial venture of surrogacy—that economically beneficial use is still available after the unwanted pregnancy is finished. The Satanic Temple has not alleged a *Lucas* taking.

There is also not a *Loretto* taking. A *Loretto* taking occurs where the government requires a property owner to suffer a *permanent* physical invasion of her property. *Id.* at 625 n.6 (citing *Lingle*, 544 U.S. at 538). This rule is "very narrow." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 441 (1982). A *Loretto* taking is a "*per se*" taking, *Bridge Aina Le'a, LLC*, 950 F.3d at 625, in contrast to a *Penn Central* taking, which is determined through an "ad hoc inquiry" of relevant factors. *Loretto,* 458 U.S. at 432. In other words, if a taking is not a *per se* taking, it is not a *Loretto* taking. When a regulation requires a property owner to allow only a *temporary* physical invasion, it is not a *per se* taking. *Id.* at 433 (citing *Kaiser Aetna v. United States*, 444 U.S. 164 (1979)) (discussing the imposition of a navigational servitude—an easement—requiring public access to a pond; explaining that it was not a "permanent occupation of land," and therefore "was not considered a taking *per se*"). Here, even assuming there is a right to abort a fetus from one's uterus—which, there is not—the challenged statutes only require a *temporary* physical invasion.

There is also not a *Penn Central* taking. *Penn Central* requires courts to consider: (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action. *Bridge Aina Le'a, LLC*, 950 F.3d at 630 (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

*First*, in analyzing the economic impact, the Court must compare the value that has been taken from the property with the value that remains in the property. *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018) (quoting *Keystone Bituminous Coal Ass'n v.*

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 9

*DeBenedictis*, 480 U.S. 470, 497, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987)). The Satanic Temple has not alleged that any of its members have lost any monetary value in their uteruses. There is no allegation that any opportunities to be a surrogate were lost, and there is no allegation as to how much such a lost opportunity would cost—other than an unhelpful assertion that surrogates "are routinely paid significant sums of money." Compl. ¶ 57.

*Second,* in analyzing reasonable investment-backed expectations, the Court must use an objective analysis, focusing on reasonable expectations based in reasonable probability—rather than "starry eyed hope of winning the jackpot if the law changes." *Bridge Aina Le'a, LLC*, 950 F.3d at 633 (quoting *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1120 (9th Cir. 2010)). Additionally, the regulatory environment at the time of acquisition of the property is relevant—a person doing business in a regulated field cannot object when subsequent legislative amendments are passed to further the legislative goals of regulation. *Id.* at 634. The Satanic Temple has not alleged that any member had reasonable expectations to act as a surrogate. The Court cannot speculate that hypothetically one member may have lost such an opportunity—the analysis must be objective and based on reasonable probability. Part of that objective analysis must be *investment* backing the expectations of surrogacy; no allegations of investment appear in the Complaint. Nor does the Complaint explain how a person should reasonably expect to be able to have abortions when the State's policy of favoring live childbirth over abortion has been enshrined in statute since 2001. Idaho Code § 18–601. The challenged statutes were passed approximately 20 years later in furtherance of that regulatory objective. Abortion, moreover, is a highly regulated area and subject to legislative change—as reflected in the extensive litigation over the scope of state authority both before and after *Dobbs*. No one can now assert that it has "an investment-backed expectation" of the right to have or conduct an abortion.

*Third,* the final factor looks to the character of the government action. Under this prong, the Court must analyze whether the governmental action has the features of a classic taking—for example, whether the action is a governmental physical invasion of land—or instead constitutes a public program that happens to affect property interests while promoting the common good.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 10

*Bridge Aina Le'a, LLC*, 950 F.3d at 635–36 (citing *Lingle*, 544 U.S. at 539). When the action seeks to prevent what the State perceives to be a significant threat to the common welfare, this factor leans heavily against finding a taking. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485 (1987). The U.S. Supreme Court found no taking where a law acted "for the protection of the health, safety and general welfare." *Id.* at 485–86. An act protecting the public interest this way is an exercise of police power. *Id.* An exercise of police power that restricts property use for purposes that are declared to be injurious to the health, morals, or safety of the community cannot be deemed a taking. *Id.* at 488–89 (1987) (citing *Mugler v. Kansas*, 123 U.S. 623, 668–69 (1887)).

The statutes being challenged here look nothing like a classic taking. Instead, they constitute social regulation, prohibiting a procedure the State perceives to be a significant threat to the common welfare, injurious to the health, morals, and safety of the community by the deliberate taking of life. The statutes exercise the State's police power, and the State cannot be burdened with the condition that it must compensate for alleged resulting pecuniary loss. *Mugler*, 123 U.S. at 668–69.

The three *Penn Central* factors taken together demonstrate that the challenged statutes do not constitute a taking. Because the challenged statutes do not constitute a taking under any of the three theories of regulatory takings—*Lucas*, *Loretto*, or *Penn Central*—The Satanic Temple fails to state a claim for a taking under the Fifth Amendment.

    **B.**    **Idaho's regulation of abortion does not force women into involuntary servitude.**

The Satanic Temple next claims that Idaho Code § 18-622 and the Fetal Heartbeat Act put involuntarily pregnant women "into a condition of involuntary servitude in violation of the Thirteenth amendment." Compl. ¶ 79. Its claim that pregnancy is equivalent to the egregious and shameful practice of slavery is as legally indefensible as it is impertinent. The primary purpose of the Thirteenth Amendment was to abolish the reprehensible institution of slavery as it had existed in the United States at the time of the Civil War; the phrase "involuntary servitude" was

intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)). Prohibited compulsory labor includes peonage, forced labor under a criminal surety system, and requiring debtors to labor under threat of prosecution. *Id.* at 943.

Here, the essence of The Satanic Temple's claim is asking the Court to recognize a right to abortion under the Thirteenth Amendment. Yet it has long been established that there is no right to abortion under the Thirteenth Amendment. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993). "Involuntary servitude" does not include a prohibition on elective abortion.[2] When a group of plaintiffs challenged a Utah abortion regulation as violating the Thirteenth Amendment, the court found that equating carrying a child to term with compulsory labor "strains credulity." *Jane L. v. Bangerter*, 794 F. Supp. 1537, 1549 (D. Utah 1992). The court found that the argument "totally lacks merit" in light of the historical context of the Thirteenth Amendment and the fact that at the time of the Amendment's ratification, 27 of the 36 states had enacted statutes prohibiting abortion. *Id.* at 1548–49.

The court in *Jane L.* recognized that involuntary servitude under the Thirteenth Amendment requires a condition in which the victim had no available choice but to work or be subject to legal sanction. *Id.* at 1548 (citing *Kozminski*, 487 U.S. at 943). The court observed that the plaintiffs were not put in such a situation: "the Utah statute does not create a situation where the woman has no available choice but to bear the child or be subject to legal sanction. No criminal penalties at all apply to a woman who chooses to abort by going to another state that permits abortion." *Id.* at 1549 n.16.

It is true that the Tenth Circuit stated that the argument rejected in *Jane L.* was not frivolous for attorney fees purposes—but it did so without opining on its merits. *Jane L. v. Bangerter*, 61 F.3d 1505, 1514–15 (10th Cir. 1995). The Tenth Circuit determined that the

---

[2] The challenged statutes do not prohibit obtaining an abortion, but only prohibit *performing* an abortion outside of the exceptions.

argument cleared this remarkably low hurdle based on a dissent from 1975 in a district court case and a comment Lawrence Tribe included in a 1988 book. *Id*. But this only underscores the dearth of support for such a meritless argument, if the Tenth Circuit could not identify a single holding to support it.

The challenged statutes do not force women to have sex or to get pregnant. The statutes penalize persons for performing abortions in this state. They do not prescribe peonage, forced labor under a criminal surety system, or debtor labor. The statutes do not violate the Thirteenth Amendment, and The Satanic Temple's claim should be dismissed.

    **C.**    **An exception for rape in Idaho's laws do not deprive women of equal protection.**

The Satanic Temple claims that Idaho Code § 18-622 and the Fetal Heartbeat Act violate the Equal Protection Clause because they discriminate against "women who are pregnant by accident" as compared to "women who are pregnant by rape." Compl. ¶ 87; *see also* ¶¶ 88, 91. This claim is not only logically frivolous, but it is also legally meritless.

The Court's equal protection analysis consists of three steps: (1) identify the classification, (2) identify a control group of individuals similarly situated in respects relevant to the challenged policy, and (3) identify and apply the appropriate level of scrutiny. *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018).

        1.    <u>The Satanic Temple has not cogently identified a classification because it failed to sufficiently allege discriminatory intent</u>.

The Satanic Temple alleges that the relevant classification is "women who engage in sex just for the pleasure and intimacy it brings and without any purpose or intent to become pregnant." Compl. ¶ 86. Except for one conclusory statement that the statutory findings in favor of life are mere "pretext designed to effect discrimination" against such women, *id.*, The Satanic Temple does not allege any facts showing an intent to discriminate. Without allegations showing discriminatory intent, The Satanic Temple has not cogently identified a classification and has failed to state an Equal Protection Clause claim.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 13

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998) (citations omitted). Discriminatory intent requires more than just a foreseeably disproportionate impact on an identifiable group or even awareness of consequences—it requires that a course of action was chosen, at least in part, *because of* its adverse effects upon the identifiable group, not merely in spite of them. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Navarro v. Block*, 72 F.3d 712, 716 n.5 (9th Cir. 1995)). Only when invidious or discriminatory purpose underlies the policy will there be the requisite discriminatory intent to state an equal protection claim. *Id.* at 686 (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977)).

The Satanic Temple's only factual allegation regarding the intent behind the challenged statutes is that they were passed to further "a compelling interest in protecting the life of a preborn child at all stages of its development," Compl. ¶ 85. The Satanic Temple provides no factual support for its conclusory assertion that this intent is merely "pretext" to discriminate against "women who engage in sex just for the pleasure and intimacy it brings and without any purpose or intent to become pregnant." Compl. ¶ 86. The Satanic Temple's own allegation as to the Legislature's intent belies this position. There is simply no support for discriminatory intent, and The Satanic Temple's equal protection claim fails at the outset.

        2.    <u>Victims of rape are not similarly situated to those women who "engage in sex just for the pleasure and intimacy it brings."</u>

It should go without saying that rape victims are not similarly situated to women who "engage in sex just for the pleasure and intimacy it brings." Compl. ¶¶ 87–88. Rape victims became pregnant as the result of a vile, criminal act to which they did not consent, or were incapable of consenting to. Idaho Code § 18–6101. Rape is, short of homicide, "the ultimate violation of self"; it displays "total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships

are to be established," and it "is very often accompanied by physical injury to the female and can also inflict mental and psychological damage." *Coker v. Georgia*, 433 U.S. 584, 597–98 (1977). "Because it undermines the community's sense of security, there is public injury as well." *Id.* at 598.

The Idaho Legislature was within its purview to weigh the welfare of rape victims along with the life of the unborn when drafting and enacting the challenged statutes. *Dobbs*, 142 S. Ct. at 2240, 2259 (observing that "[a]bortion presents a profound moral issue . . . others in a third group think that abortion should be allowed under some but not all circumstances," and holding that "the power to weigh those arguments" would be returned "to the people and their elected representatives.").

Under the similarly situated analysis, "[t]he groups need not be similar in all respects, but they must be similar in those respects relevant to the Defendants' policy." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) (cleaned up). For purposes of a policy that weighs the various interests in the life of the unborn and the welfare of rape victims, a rape victim is not substantially similar to a person who engaged in consensual sex.

        3.    <u>The decision to allow an exception for rape is rationally related to a legitimate government interest</u>.

Laws challenged under the Equal Protection Clause are subject to one of three levels of scrutiny: strict scrutiny, intermediate scrutiny, or rational basis review. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004). Strict scrutiny applies to suspect classifications, such as race; intermediate scrutiny applies to quasi-suspect classifications, like sex or gender; and rational basis applies when no suspect class is involved and no fundamental right is burdened. *Id.* at 1277–78.

Rational basis applies here. The category of "women who engage in sex just for the pleasure and intimacy it brings" is not a suspect or quasi-suspect class. And no fundamental right is at issue. Although The Satanic Temple brought this case to obtain a right for its members to have abortions, it attempts to recast the asserted right as the "right to use contraception and

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 15

engage in sex just for the pleasure and intimacy it brings." Compl. ¶ 81. But this is not the pertinent "right" at issue—abortion is the right at issue: "This discrimination infringes upon the fundamental right of Involuntarily Pregnant Women to engage in Protected Sex *because they are forced to pay the physical and financial costs of being pregnant without their consent while women who are impregnated by rape are not*." Compl. ¶ 88 (emphasis added). In other words, the challenged statutes allow victims of rape to obtain an abortion—relieving them of the burdens of pregnancy—while others may not. But there is no fundamental right to abortion. *Dobbs*, 142 S. Ct. at 2279. Therefore, rational basis applies.

Here, the rape exception[3] in Idaho Code § 18-622 and the Fetal Heartbeat Act "must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* at 2284. The Satanic Temple has the burden to negative every conceivable basis that might support it, whether or not the basis has a foundation in the record. *Boardman v. Inslee*, 978 F.3d 1092, 1118 (9th Cir. 2020) (citation omitted). Under rational basis review, a classification will be upheld even where it may be underinclusive or overinclusive. *Gallinger*, 898 F.3d at 1018 (citing *Vance v. Bradley*, 440 U.S. 93, 108 (1979)).

The State has a legitimate interest in protecting victims of rape from physical and psychological harms specific to this very small subset of women who become pregnant—such as exacerbation of severe trauma. In its role to balance the relevant considerations, the Legislature has the power to make an exception to abortion regulations for victims of rape. *See Dobbs*, 142

/ / /

/ / /

---

[3] Although Idaho Code § 18-622 and the Fetal Heartbeat Act contain other exceptions, the Complaint only focuses on the rape exception. *See* Compl. ¶¶ 87, 88. To the extent The Satanic Temple seriously questions the other exceptions, they are likewise served by a rational basis: whether it be preserving the life of the mother when her life is in jeopardy or furthering the criminal prohibition of incest and protecting societal interests, these exceptions have well-entrenched rational bases.

S. Ct. at 2240, 2259 (recognizing that some believe abortion should be allowed in only some circumstances, and declaring that a state has power to weigh the relevant arguments on policy).[4]

### III. The Court lacks jurisdiction over the state law claim involving these Defendants. Even if the Court believed it could exercise jurisdiction, it should decline to do so.

The Satanic Temple's fourth claim is that Idaho Code § 18-622 and the Fetal Heartbeat Act, which were recently adopted by the Idaho Legislature, violate an older statutory enactment under Idaho Code § 73-402 adopted by the Idaho Legislature, which created a chapter titled "Free Exercise of Religion Protected." Compl. ¶ 99; *see* 2000 Idaho Sess. Laws. 352. Defendants will refer to this as the Free Exercise Act.

There are multiple problems with The Satanic Temple's claim.[5] Chief among them is that as to these Defendants—Governor Little and General Wasden—the Court has no jurisdiction of any state law cause of action that might exist in Idaho Code § 73-402. Even if the Court could exercise jurisdiction, it should use its discretion to decline to do so given the complexities of a Free Exercise Act claim. And finally, a Free Exercise Act claim is not viable in this case.

#### A. Defendants have Eleventh Amendment or sovereign immunity.

As discussed above, states and state instrumentalities have Eleventh Amendment immunity from suit in federal court, and suits against state officers in their official capacity are functionally suits against the state. Both Governor Little and General Wasden have been sued in their official capacities. Compl. ¶¶ 19, 20. The relief sought would directly impact the State itself by seeking to block Idaho's regulation of abortion. *See id.* at 15. The *Ex parte Young* exception to Eleventh Amendment immunity is inapplicable to this claim, as that exception only applies to

---

[4] Indeed, the U.S. Congress has limited the use of federal funds to exclude payment for abortions, except in the case of rape or incest, or in the case where the mother's life is in danger, through its Hyde-Weldon Amendment. The most recent amendment applicable to the Department of Health and Human Services was part of the Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, §§ 506-507, 136 Stat. 496, 496 (2022). *See also Harris v. McRae*, 448 U.S. 297 (1980) (upholding Hyde Amendment).

[5] Defendants reserve the right to raise additional 12(b)(6) grounds for dismissal of this claim. *See* Fed. R. Civ. P. 12(h)(2).

alleged violations of federal law. *Air Transp. Ass'n of Am. v. Public Util. Comm'n of State of Cal.*, 833 F.2d 200, 204 (9th Cir. 1987) (citation omitted).

The Satanic Temple cites 28 U.S.C. § 1367 as the basis for the Court's jurisdiction. Compl. ¶ 27. Yet, nonconsenting states (or their instrumentalities) cannot be dragged into federal court on the basis of 28 U.S.C. § 1367 when they are shielded by Eleventh Amendment immunity. That is the conclusion of *Raygor v. Regents of University of Minnesota*, 534 U.S. 533, 540-42 (2002); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) (concluding, pre-adoption of § 1367, that the Eleventh Amendment barred adjudication of pendent state law claims).

Here, any cause of action in Idaho Code § 73-402 is authorized against "a government," but not an officer of a government. *See also* Idaho Code § 73-401(3) (defining government). Had the State of Idaho chosen to consent to suits against its officers, it would have said so. It did not. Thus, Defendants have Eleventh Amendment immunity, and this Court cannot sidestep such immunity through 28 U.S.C. § 1367.

> **B.   Even if this Court believes it can exercise supplemental jurisdiction, it should decline to do so.**

Even if the Court believes it can exercise supplemental jurisdiction under 28 U.S.C. § 1367, it should not. Generally, a court that dismisses every claim over which it has original jurisdiction has the discretion to decline supplemental jurisdiction. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Judicial economy, convenience, fairness, and comity are factors to be considered. *Bymun v. City of Kimberly*, No. 1:20-CV-00171-DCN, 2021 WL 2370977, at *2 (D. Idaho June 9, 2021). And when the federal law claims have been eliminated, the balance of factors "will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* (citation and internal quotation marks omitted).

Claims under the Free Exercise Act present "difficult and delicate" questions of fact, including whether a person's convictions are "religious beliefs" under the Free Exercise Act, or philosophical, political, or ideological beliefs, to which the Free Exercise Act does not apply.

*State v. Heath*, 168 Idaho 678, 685, 485 P.3d 1121, 1128 (2021) (citing *State v. Cordingley*, 154 Idaho 762, 767, 302 P.3d 730, 735 (Ct. App. 2013)). The Idaho Supreme Court has not yet announced how this inquiry is carried out, but the Idaho Court of Appeals has used a complicated 14-factor test asking whether the asserted "religion" contains certain indicia.[6] *Cordingley*, 154 Idaho at 769, 302 P.3d at 737. Rather than this Court tackling this arduous task when no federal question is present, the Court should allow a state court to undertake the inquiry. Subsequently, Idaho appellate courts can review the application of the 14-factor test—or perhaps hold that a different test altogether is appropriate. *State v. Heath*, 168 Idaho 678, 685, 485 P.3d 1121, 1128 (2021) (explaining that the Idaho Supreme Court has not had occasion to endorse or reject the test).

      **C.**      **The state law claim does not establish a viable claim for relief.**

As discussed above, any cause of action created by Idaho Code § 73-402 is limited to a government. Defendants Governor Little and General Wasden, though officers of the State, are persons. A person is not a "government." "Government" is defined in the Free Exercise Act without any suggestion that a person is included. Idaho Code § 73-401. As such, there is no viable claim against Governor Little and General Wasden, and any claim under the Free Exercise Act should be dismissed.

Another reason also makes this fourth claim not viable. The essence of the claim is that the Idaho Legislature, in enacting Idaho Code § 18-622 and the Fetal Heartbeat Act, violated its earlier enactment of the Free Exercise Act. But such reasoning is flawed from the get-go, as it is well established that one session of the Idaho Legislature cannot deprive a future session of the

---

[6] There are five main factors: (1) ultimate ideas; (2) metaphysical beliefs; (3) moral or ethical system; (4) comprehensiveness of beliefs; and (5) accoutrements of religion. Factor (5) contains ten sub-factors: (a) founder, prophet, or teacher; (b) important writings; (c) gathering places; (d) keepers of knowledge; (e) ceremonies and rituals; (f) structure or organization; (g) holidays; (h) diet or fasting; (i) appearance and clothing; and (j) propagation. *State v. Cordingley*, 154 Idaho 762, 769, 302 P.3d 730, 737 (Ct. App. 2013).

Idaho Legislature from enacting laws in accordance with its constitutional power. *See Johnson v. Deifendorf*, 56 Idaho 620, 57 P.2d 1068, 1075 (1936).

## CONCLUSION

For the reasons above, The Satanic Temple's Complaint should be dismissed.

DATED:  November 22, 2022.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By:  */s/ Brian V. Church*
BRIAN V. CHURCH
DAYTON P. REED
Deputy Attorneys General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of November 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jeremiah M. Hudson
FISHER HUDSON SHALLAT
jeremiah@fisherhudson.com

W. James Mac Naughton
wjm@wjmesq.com

*/s/ Brian V. Church*
BRIAN V. CHURCH
Deputy Attorney General