Jeremiah M. Hudson
Fisher Hudson Shallat
jeremiah@fisherhudson.com
ISB No. 8364
950 W. Bannock St., Suite 630
Boise, ID 83702
208-345-7000

W. James Mac Naughton, Esq.
wjm@wjmesq.com
NJSB No. 000701985
7 Fredon Marksboro Road
Newton, NJ 07860
732-213-8180
*Attorneys for Plaintiff The Satanic Temple*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

---

THE SATANIC TEMPLE

       Plaintiff

     v.

RAUL LABRADOR, in his
capacity as the Attorney General of
Idaho, JAN M. BENNETTS, in
her capacity as Ada County Prosecutor,
and THE STATE OF IDAHO

       Defendants

Case No. 1:22-cv-411

---

## FIRST AMENDED COMPLAINT

Plaintiff The Satanic Temple ("TST") alleges as follows:

### Parties

1. TST is a religious association with its principal place of business in Salem,

Massachusetts.

2. TST has over 1.5 million members worldwide, including over 3,500 members in

1

Idaho.

3. TST venerates, but does not worship, the allegorical Satan described in the epic poem Paradise Lost - the defender of personal sovereignty against the dictates of religious authority.

4. Members in TST adhere to seven tenets (the "TST Tenets") commonly associated with secular humanism:

    A.   Tenet I -One should strive to act with compassion and empathy toward all creatures in accordance with reason.

    B.   Tenet II - The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.

    C.   Tenet III - One's body is inviolable, subject to one's own will alone.

    D.   Tenet IV - The freedoms of others should be respected, including the freedom to offend. To encroach upon the freedoms of another willfully and unjustly is to forgo one's own.

    E.   Tenet V - Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.

    F.   Tenet VI - People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

    G.   Tenet VII - Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.

5. TST promotes the TST Tenets with a variety of programs, including, but not limited to, litigating the validity of abortion regulations that infringe on the TST Tenets.

6. TST has female TST members residing in Idaho who are or will become involuntarily pregnant ("Involuntarily Pregnant Women").

7. The TST members wish to remain anonymous due to the risk of violent retribution from domestic terrorists motivated by animosity to proponents of abortion and non-Christian religious beliefs.

8. An Involuntarily Pregnant Woman is a woman who:

    A. Is "pregnant," as that term is defined in Idaho Code § 18-604(11) with an "unborn child" as that term is used in Idaho Code § 18-604(5); and

    B. The "unborn child" is not "viable" as that term is used Idaho Code § 18-604(15); and

    C. Became pregnant without her consent due to the failure of her Birth Control, as hereinafter defined; and

    D. Is a member of TST.

9. Idaho Code § 18-604(5) defines an unborn child to be "an individual organism of the species Homo sapiens from fertilization until live birth."

10. Idaho Code § 18-8802(1) states the legislative finding that "[t]he life of each human being begins at fertilization, and preborn children have interests in life, health, and well-being that should be protected."

11. Idaho Code § 18-8802(8) states the legislative finding that "the state of Idaho has a compelling interest in protecting the life of a preborn child at all stages of its development, including after the preborn child has a detectable heartbeat, which signals rhythmically and without pause the presence of a precious and unique life, one that is independent and distinct from the mother's and one that is also worthy of our utmost protection."

12. The "unborn child" defined in Idaho Code § 18-604(5) and "preborn child" defined in Idaho Code § 18-8802 are referred to herein as a Prenatal Person.

13. Consistent with TST Tenets III and V, TST members believe the fetal tissue a pregnant woman carries in her uterus – from conception until viability - is part of her body and not imbued with any humanity or existence separate and apart from that of the woman herself.

14. Consistent with the TST Tenets III and V, TST members believe a woman who carries a Prenatal Person in her uterus without her consent must remove that Prenatal Person from her body provided it can be done without jeopardy to her own health and safety.

15. Pregnant TST members can and do get abortions, where they are legal, to terminate an unwanted pregnancy as an exercise of their religious beliefs pursuant to the Satanic Abortion Ritual, a copy of which is attached as Exhibit A.

16. Pregnant TST members in Idaho could and did get abortions in the exercise of the Satanic Abortion Ritual prior to August 25, 2022.

17. TST, doing business as TST Health, has spent a substantial amount of money to establish an abortion clinic (the "TST Clinic").

18. The purpose of the TST Clinic is to:

    A.  Promote the Satanic Abortion Ritual;

    B.  Prescribe mifeprestone and misoprostol ("Abortifacients") to pregnant members of TST nationwide using telemedicine ("Medical Abortions"); and

    C.  Deliver Abortifacients to TST members nationwide for use in Medical Abortions; and

    D.  Counsel TST members on the use of Abortifacients in the Satanic Abortion Ritual; and

E.  Counsel TSTS members on the application of the Satanic Abortion Ritual to

surgical abortions.[1]

19. The TST Clinic was established in response to the bans on abortion in Idaho and

other states.

20. The TST Clinic will become operational on or about February 1, 2023, in New

Mexico.

21. The TST Clinic will provide Medical Abortions to TST members in Idaho, provided

it can do so lawfully.

22. The creation of the TST Clinic has resulted in a diversion of TST resources from

other programs and the corresponding reduction of TST's ability to promote the TST Tenets by

other means.

23. Involuntarily Pregnant Women are unable to get an abortion and engage in the

Satanic Abortion Ritual in Idaho due to the criminalization of abortions in Idaho pursuant to

Idaho Code § 18-604 et seq. (the "Criminal Abortion Statute") and the criminal and civil

sanctions imposed by Idaho Code § 18-8801 et seq. (the "Fetal Heartbeat Statute") on abortion

providers.

24.  The Criminal Abortion Statute and Fetal Heartbeat Statute are referred to herein

jointly and severally as the Idaho Abortion Bans.

25. The TST Clinic is unable to provide Medical Abortions to TST members in Idaho due

to the criminal and civil sanctions imposed by the Idaho Abortion Bans on anyone who provides

or aids on the performance of an abortion in Idaho.

26. Defendant Raul Labrador is the Attorney General of Idaho with responsibility for

---

[1] TST Clinic does not currently intend to provide surgical abortions, e.g., dilation and curettage.

enforcing the Idaho Abortion Bans.  Attorney General Labrador is sued in his official capacity as Attorney General.

27. Defendant Jan M. Bennetts is the prosecutor for Ada County, Idaho with responsibility for enforcing the Idaho Abortion Bans in Ada County.  Prosecutor Bennetts is sued in her official capacity as the Prosecutor for Ada County.

28. Most of the abortions provided in Idaho in the last two years were done in Ada County.

29. Defendant State of Idaho is a "government" for purposes of Idaho Code § 73-402(4) and a party defendant solely for purposes of Count Four.

30. Defendants, other than the State of Idaho, act under color of state law in violation of 42 U.S.C. § 1983 when they enforce the Idaho Abortion Bans against TST and its members in deprivation of their rights under the U.S. Constitution.

### Jurisdiction and Venue

31. Count One seeks injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the takings clause of the Fifth Amendment as applied to Idaho pursuant to the Fourteenth Amendment.

32. Count Two seeks injunctive relief pursuant to the Thirteenth Amendment prohibition of involuntary servitude, which is self-executing on the states.

33. Count Three seeks injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the equal protection clause of the Fourteenth Amendment.

34. The Court has jurisdiction to decide Counts One, Two and Three pursuant to 28 USC § 1331 because the resolution of Plaintiff's claims presents questions of federal law.

35. Count Four seeks injunctive relief pursuant to the Free Exercise of Religion

Protection Act ("FERPA"), Idaho Code § 73-401 et seq., for violation of the right of TST

members to partake in the Satanic Abortion Ritual in Idaho and the right of TST to promote and

enable the Satanic Abortion Ritual in Idaho.

36. The Court has jurisdiction to decide Count Four pursuant to 28 U.S.C. § 1367

because the claims made in Count Four are so related to claims made in Counts One, Two and

Three that they form part of the same case or controversy under Article III of the U.S.

Constitution.

**Zygotes and Blastocysts**

37. The most common method for creating a Prenatal Person starts with the deposit of a

man's sperm inside a woman's vagina during the course of sex.

38. Once the man's sperm is deposited in the woman's vagina, it travels through her

uterus and into her fallopian tubes where it may encounter an egg produced by her ovaries.

39. When a single sperm fuses with or fertilizes the woman's egg, the resulting cell is

known as a zygote. The fertilization process takes about 24 hours and typically occurs about two

(2) weeks after the first day of the woman's last menstrual cycle.  The first day of the last

menstrual cycle prior to fertilization is the starting point for measuring the course of a pregnancy

commonly known as the estimated gestational age ("EGA").

40. The zygote contains all of the genetic information (DNA) needed to become an adult

human being. Half of the genetic information comes from the woman's egg and half from the

man's sperm.

41. A zygote is a Prenatal Person pursuant to the Idaho Abortion Bans.

42. None of the Involuntarily Pregnant Women was aware of or consented to the creation

of a zygote in her fallopian tubes at the time of fertilization.

43. The Idaho Abortion Bans do not apply to the destruction of a zygote by "the use of an intrauterine device or birth control pill to inhibit or prevent . . . the implantation of a fertilized ovum within the uterus." Idaho Code §§ 18-604(1) and 18-8801(1).

44. After its creation, a zygote travels down the fallopian tube and divides to form a ball of cells known as a blastocyst.

45. A blastocyst is a Prenatal Person pursuant to the Idaho Abortion Bans.

46. The blastocyst reaches the uterus around five days after fertilization or three (3) weeks EGA. During this period, the blastocyst occupies empty space inside the fallopian tube or uterus.

47. The Idaho Abortion Bans do not apply to the destruction of a blastocyst while it occupies empty space in the fallopian tube or uterus.

48. Between six (6) and eleven (11) days after fertilization or three (3) to four (4) weeks EGA, the blastocyst implants into and occupies a layer of tissue in the uterus commonly known as the endometrium.

49. Upon implantation of the blastocyst into the uterus, the removal of the implanted blastocyst from the uterus is defined as an abortion in the Idaho Abortion Bans.

50. None of the Involuntarily Pregnant Women were aware of or consented to the implantation of a blastocyst into her uterus at the time it occurred.

51. Prior to implantation in the endometrium, the zygote and blastocyst derive nutrients from the mother's egg.

52. Once a blastocyst is implanted into and occupies the endometrium, it forms the cells necessary for a placenta and the development of bodily organs, e.g., heart, lungs, brain, etc. This

8

stage is known as the embryo.[2]

53. An embryo is a Prenatal Person for purposes of the Idaho Abortion Bans.

54.  The removal of an embryo from the uterus is defined as an abortion in the Idaho Abortion Bans.

55. An embryo is entirely dependent on the woman whose uterus it occupies for all of its oxygen and other nutrients, as well as physical protection until it becomes a viable fetus.

56. A pregnant woman's body produces the hormone progesterone, which is necessary for the endometrium to retain and nurture an embryo.  If there is insufficient progesterone, the uterus will eject the embryo, i.e., miscarry, causing the death of the embryo.

57. During the first ten (10) weeks EGA, progesterone is produced by the Corpus Lutem, a cyst on the woman's ovaries. The embryo's placenta thereafter produces progesterone.

58. By the completion of ten (10) weeks EGA, the embryo has developed to the point of becoming a fetus and remains attached to the endometrium.

59. A fetus is a Prenatal Person pursuant to the Idaho Abortion Bans.

60. The removal of a fetus from the uterus is defined as an abortion in the Idaho Abortion Bans.

61. A fetus is entirely dependent on the woman whose uterus it occupies for all of its oxygen and other nutrients, as well as physical protection.

62. A fetus is dependent on the woman whose uterus it occupies for her labor, including but not limited to uterine contractions, to be delivered outside her body at birth.

---

[2] The word "embryo" is also commonly used to describe both the zygote and blastocyst.  For purposes of this action, Plaintiff refers to an "embryo" as the fetal development stage between blastocyst and fetus.

**Gestational Surrogacy**

63. Since the mid-1980's, zygotes, blastocysts, and embryos have also been created outside a woman's body using in vitro fertilization ("IVF").  The father provides the sperm in a laboratory setting and the mother provides the egg in a laboratory setting.  The sperm fertilizes the egg in a laboratory setting creating a zygote.  The zygote develops into a blastocyst or embryo outside a woman's body in a laboratory setting.

64. The blastocyst or embryo created outside the woman's body using IVF is then surgically inserted into the empty space in a woman's uterus with the expectation it will implant in her endometrium.

65. Gestational surrogacy occurs when one woman provides the egg for fertilization by IVF, and another woman provides the use of her uterus for the incubation of the blastocyst or embryo into a viable child ("Gestational Surrogacy").

66. Gestational Surrogacy is legal in Idaho and routinely accomplished using a contract binding on the participants.  The woman who provides the use of her uterus for the incubation of the blastocyst or embryo created in a laboratory into a viable fetus is commonly known as a gestational carrier.

67. Gestational carriers in Idaho are routinely paid significant sums of money for providing the use of their uterus to incubate a blastocyst or embryo created by IVF into a viable fetus.

68. Payments to gestational carriers also include compensation for the labor and other work provided by the gestational carrier to deliver a viable fetus at birth.

69. The only economic use for a uterus is being a gestational carrier.

70. An Involuntarily Pregnant Woman cannot be a gestational carrier because her uterus

is already in use.

## Birth Control

71. The Involuntarily Pregnant Women used a variety of methods of contraception to avoid pregnancy ("Birth Control").

72. Each of the Involuntarily Pregnant Women reasonably believed the Birth Control she used would be effective.

73. The Birth Control used by Involuntarily Pregnant Women failed and they became pregnant by accident and without their consent.

## Count One:

### The Idaho Abortion Bans Unconstitutionally Take the Property of Involuntarily Pregnant Women Without Just Compensation.

74. Plaintiff repeats and realleges ¶¶ 1 to 73.

75. The United States Supreme Court states that the term "property," as used in the Fifth Amendment of the United States Constitution, "denote(s) the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." *U.S. v. General Motors Corporation*, 65 S.Ct. 357, 359, 323 U.S. 373, 378 (U.S. 1945); *See also Newman v. Sathyavaglswaran*, 287 F.3d 786, 798 (9th Cir. 2002).

76. The uterus of an Involuntarily Pregnant Woman is a physical thing in which she has property rights, including without limitation, the property right to:

    A.  Have her uterus removed for any purpose, including without limitation, changing her sex; or

    B.  Rent it out to a third party as a gestational carrier; or

    C.  Retain any blastocyst, embryo, or nonviable fetus in her uterus; or

    D.  Exclude any blastocyst, embryo, or nonviable fetus from her uterus;

E.  Remove any blastocyst, embryo, or nonviable fetus from her uterus.

77. The property right of an Involuntarily Pregnant Woman to exclude or remove a Prenatal Person from her uterus cannot be taken by the State of Idaho without just compensation pursuant to the Takings Clause of the Fifth Amendment to the U.S. Constitution.

78. The property right to exclude or remove a Prenatal Person from a woman's uterus has substantial commercial value as established by over twenty-five years of experience with gestational surrogacy in Idaho.

79. The Idaho Abortion Bans make the exclusion or removal of a Prenatal Person from the uterus of an Involuntarily Pregnant Woman a crime.

80. The Idaho Abortion Bans impose substantial civil liabilities on anyone who provides an abortion or otherwise assists in the removal of a Prenatal Person from the uterus of an Involuntarily Pregnant Woman.

81. The Idaho Abortion Bans cause a taking of the property rights of an Involuntarily Pregnant Woman by preventing her from exercising her property rights to exclude or remove a Prenatal Person from her uterus.

82. The Idaho Abortion Bans fail to provide just compensation to an Involuntarily Pregnant Woman for the taking of her property rights on or before the occupancy of her uterus by a Prenatal Person.

83. The Idaho Abortion Bans are unconstitutional as applied to Involuntarily Pregnant Women under the takings clause of the Fifth Amendment and the Fourteenth Amendment.

84. Any post-taking just compensation awarded by an Idaho state court to an Involuntarily Pregnant Woman is inadequate because the occupancy of her uterus by a Prenatal Person also subjects her to involuntary servitude in violation of the Thirteenth Amendment.

**Count Two:**

**The Idaho Abortion Bans Subject Involuntarily Pregnant Women
to Involuntary Servitude in Violation of the Thirteenth Amendment.**

85. Plaintiff repeats and realleges ¶¶ 1 to 84.

86. The term "involuntary servitude" means "the control of the labor and services of one [person] for the benefit of another, and the absence of a legal right to the disposal of his [or her] own person, property, and services." *Clyatt v. U.S.*, 25 S.Ct. 429, 431, 197 U.S. 207, 218 (U.S. 1905).

87. Under the Idaho Abortion Bans, the State of Idaho requires each Involuntarily Pregnant Woman to provide a Prenatal Person with the following labor and services, among others:

    A.  Hormones, including but not limited to progesterone.

    B.  Oxygen.

    C.  Nutrients.

    D.  Antibodies.

    E.  Body heat.

    F.  Protection from external shocks and intrusions.

    G.  Uterine contractions and other labor during the course of delivery.

88. The Idaho Abortion Bans cause each Involuntarily Pregnant Woman to provide the services necessary to sustain the life of a Prenatal Person that occupies and uses her uterus.

89. The Idaho Abortion Bans cause each Involuntarily Pregnant Woman to provide the labor necessary to deliver a Prenatal Person during birth.

90. The Idaho Abortion Bans provide no compensation or consideration to an Involuntarily Pregnant Woman for providing the services necessary to sustain the life of a

Prenatal Person that occupies and uses her uterus.

91. The Idaho Abortion Bans provide no compensation or consideration to an Involuntarily Pregnant Woman for providing the labor and other work necessary to birth a Prenatal Person.

92. Those services and labor have a substantial commercial value in Idaho as established by over twenty-five years of experience with gestational surrogacy.

93. The Idaho Abortion Bans are enforced by the use or threatened use of legal coercion including but not limited to:

    A.  Conviction and incarceration of an Involuntarily Pregnant Woman for getting or soliciting an abortion pursuant to Idaho Code § 18-606(2); and

    B.  Conviction and incarceration and the imposition of civil penalties and sanctions on any person who provides, assists, or enables an Involuntarily Pregnant Woman to get an abortion.

94. The Idaho Abortion Bans are unconstitutional as applied to the Involuntarily Pregnant Women because they are put into a condition of involuntary servitude in violation of the Thirteenth Amendment.

**Count Three:**

**The Idaho Abortion Bans Unconstitutionally Discriminate Between
Women Who Are Pregnant by Accident and
Women Who Are Pregnant by Rape or Incest**

95. Plaintiff repeats and realleges ¶¶ 1 to 94.

96. All women have the fundamental right to use contraception and engage in sex just for the pleasure and intimacy it brings and without any purpose or intent to become pregnant ("Protected Sex").

97. The Involuntarily Pregnant Women engaged in Protected Sex but became pregnant by accident and without their consent due to the failure of their Birth Control.

98. The Idaho Abortion Bans impose criminal penalties on Involuntarily Pregnant Women who get an abortion, notwithstanding their lack of consent to becoming pregnant. Idaho Code § 18-606(2).

99. The Idaho Abortion Bans impose criminal penalties and civil sanctions on TST if it provides Medical Abortions to Involuntarily Pregnant Women in Idaho or otherwise knowingly aids them in getting an abortion.

100. The Idaho Abortion Bans do not apply to a pregnant woman who reports an act of rape or incest to a law enforcement agency.  Idaho Code §§ 18-622(3)(b)(ii) and 18-8804(1)(a).

101. The Idaho Abortion Bans discriminate between similarly situated women who are pregnant without their consent - women who are pregnant by accident and women who report they are pregnant by rape.

102. This discrimination infringes upon the fundamental right of Involuntarily Pregnant Women to engage in Protected Sex because they are forced to pay the physical, emotional, and financial costs of being pregnant without their consent while women who report they are impregnated by rape are not.

103. There is no compelling state interest served by this discrimination.

104. Whatever government interest this discrimination purports to serve can be accomplished by means less intrusive on the fundamental right of Involuntarily Pregnant Women to engage in Protected Sex.

105. The Idaho Abortion Bans violate the equal protection clause of the Fourteenth Amendment.

15

**Count Four:**

**The Idaho Abortion Bans Violate the Idaho Exercise of Religious Freedom Act
Because They Make the Exercise of the Satanic Abortion Ritual a Crime.**

106. Plaintiff repeats and realleges ¶¶ 1 to 105.

107. When a member of TST has an unwanted pregnancy, she exercises her religious beliefs as expressions of Tenets III and V by engaging in the Satanic Abortion Ritual.

108. The Idaho Abortion Bans make the exercise of the Satanic Abortion Ritual in Idaho a crime and effectively prohibits it.

109. The Idaho Abortion Bans makes it a crime for TST to enable TST members in Idaho to partake in the Satanic Abortion Ritual.

110. There is no compelling state interest served by making the exercise of the Satanic Abortion Ritual in Idaho a crime.

111. There are less restrictive means of furthering the state's asserted interests served by the Idaho Abortion Bans than by making the exercise of the Satanic Abortion Ritual in Idaho a crime.

112. The Idaho Abortion Bans violates the Idaho Exercise of Religious Freedom Act, Idaho Code § 73-401 et seq.

## COSTS AND ATTORNEY FEES

Plaintiff's claims in Counts One, Two and Three arise from violations of 42 U.S.C. § 1983.  As an action to enforce this provision and vindicate a violation of civil rights, Plaintiff is entitled to an award of reasonable costs of suit and attorney fees in an amount deemed reasonable by this Court pursuant to 42 U.S.C. § 1988 in the event it is the prevailing party.

Plaintiff's claims in Count Four arise from violations of Idaho Code § 73-401 et seq. Plaintiff is entitled to the award of attorney fees pursuant to Idaho Code § 73-402(4) in the event it is the prevailing party.

**PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:**

A.      Entry of an order permanently enjoining Defendants from enforcing the Idaho Abortion Bans against Involuntarily Pregnant Women or anyone who provides an Involuntarily Pregnant Woman with an abortion.

B.      Entry of an order permanently enjoining Defendants from enforcing the Idaho Abortion Bans against TST for the provision of Medical Abortions in Idaho.

C.      For costs of suit, including reasonable attorneys' fees.

D.      For such other and further relief as this Court deems just and equitable.

DATED: December 13, 2022

> *Jeremiah M. Hudson*
> Jeremiah M. Hudson
> Fisher Hudson Shallat
> 950 W. Bannock St.
> Suite 630,
> Boise, ID 83702
> jeremiah@fisherhudson.com
> 208-345-7000
> *Attorney for Plaintiff The Satanic Temple*
>
> *W. James Mac Naughton*
> W. James Mac Naughton, Esq.
> 7 Fredon Marksboro Road
> Newton, NJ 07860
> wjm@wjmesq.com
> 732-213-8180
> *Attorney for Plaintiff The Satanic Temple*

**CERTIFICATE OF SERVICE**

I Hereby Certify that on the date of this pleading, I electronically filed it with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

BRIAN V. CHURCH
Deputy Attorney General
brian.church@ag.idaho.gov

DAYTON P. REED
Deputy Attorney General
dayton.reed@ag.idaho.gov

*/s/ W. James Mac Naughton*