RAÚL R. LABRADOR
ATTORNEY GENERAL

Lincoln D. Wilson, ISB #11860
Chief of Civil and Constitutional Defense

Brian V. Church, ISB #9391
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
lincoln.wilson@ag.idaho.gov
brian.church@ag.idaho.gov
*Attorneys for Defendants*

## UNITED STATE DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| THE SATANIC TEMPLE,<br><br>    Plaintiff,<br><br>v.<br><br>RAUL LABRADOR, in his capacity as the Attorney General of Idaho, JAN M. BENNETTS, in her capacity as Ada County Prosecutor, and THE STATE OF IDAHO,<br><br>    Defendants. | Case No. 1:22-cv-411-DCN<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

# TABLE OF CONTENTS

Table of Cases and Authorities ................................................................. i

Introduction ........................................................................................... 1

Legal Standard ....................................................................................... 3

Argument ................................................................................................ 3

I.   Sovereign Immunity Bars the Satanic Temple From Suing Idaho ...................... 3

II.  The Satanic Temple Lacks Standing ................................................................. 3

    A.  Satanic Temple does not establish associational standing ........................... 4

    B.  Satanic Temple does not establish its own standing ................................... 5

        1.  *After* Dobbs, *abortionists no longer have third-party standing to assert an "interest" in helping women abort children* ........................................... 6

        2.  *Satanic Temple's alleged injuries are not imminent or concrete* ............... 7

        3.  *Satanic Temple's decision to spend money on its New Mexico clinic is not traceable to Idaho* ................................................................................... 8

        4.  *The unincorporated association before the Court lacks standing as to claims regarding the clinic* ....................................................................... 9

III. Satanic Temple Fails to State a Claim for Relief ............................................. 10

    A.  The takings claim must be dismissed ........................................................ 10

        1.  *Satanic Temple can't seek an equitable remedy on its takings claim in federal court* ............................................................................................ 10

        2.  *Idaho's abortion laws don't take property without just compensation* .... 11

    B.  By protecting unborn lives, Idaho does not force women into "involuntary servitude" ............................................................................................... 11

    C.  Idaho's abortion laws don't violate equal protection because they exempt rape victims ............................................................................................. 12

        1.  *Satanic Temple hasn't identified a cogent classification* ....................... 13

*2. Women who engage in consensual sex are not similarly situated to victims of rape* ............................................................................... 14

*3. Idaho's decision to allow an exception for rape is rationally related to a legitimate government interest* ................................................ 15

D.   The Court lacks jurisdiction over Satanic Temple's state law claim ........ 16

CONCLUSION ...................................................................................... 19

## TABLE OF CASES AND AUTHORITIES

**Cases**

*Arizona Dream Act Coal. v. Brewer,*
  757 F.3d 1053 (9th Cir. 2014)................................................................. 14

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1990)..................................................................... 3

*Barren v. Harrington,*
  152 F.3d 1193 (9th Cir. 1998)................................................................. 13

*Bymun v. City of Kimberly,*
  1:20-cv-00171-DCN, 2021 WL 2370977 (D. Idaho June 9, 2021)........................... 18

*Carlsbad Tech., Inc. v. HIF Bio, Inc.,*
  556 U.S. 635 (2009)................................................................................. 17

*Civil Rights Cases,*
  109 U.S. 3 (1883)................................................................................. 12

*Clapper v. Amnesty Int'l, USA,*
  568 U.S. 398 (2013)................................................................................. 9

*Coker v. Georgia,*
  433 U.S. 584 (1977)............................................................................... 14

*Dep't of Commerce v. New York,*
  139 S. Ct. 2551 (2019)............................................................................. 8

*Dobbs v. Jackson Women's Health,*
  142 S. Ct. 2228 (2022)................................................................... *passim*

*Doe v. Regents of the Univ. of Cal.,*
  891 F.3d 1147 (9th Cir. 2018)................................................................. 17

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
  528 U.S. 167 (2000)................................................................................. 4

*FW / PBS, Inc. v. City of Dallas,*
  493 U.S. 215 (1990)................................................................................. 4

*Gallinger v. Becerra,*
   898 F.3d 1012 (9th Cir. 2018) ................................................................. 13

*Godecke v. Kinetic Concepts, Inc.,*
   937 F.3d 1201 (9th Cir. 2019) ................................................................... 3

*Hans v. Louisiana,*
   134 U.S. 1 (1890) ...................................................................................... 4

*Hooper v. State,*
   150 Idaho 497, 248 P.3d 748 (2011) ...................................................... 17

*Ismail v. Cnty. of Orange,*
   917 F. Supp. 2d 1060 (C.D. Cal. 2012) .................................................. 17

*Johnson v. Deifendorf,*
   56 Idaho 620, 57 P.2d 1068 (1936) ......................................................... 19

*June Med. Servs., Inc. v. Russo,*
   140 S. Ct. 2103 (2020) ........................................................................... 6, 7

*Kahawaiolaa v. Norton,*
   386 F.3d 1271 (9th Cir. 2004) ................................................................. 15

*KMST, LLC v. Cnty. of Ada,*
   138 Idaho 577 (2003) .............................................................................. 10

*Knick v. Twp. of Scott, Pa.,*
   139 S. Ct. 2162 (2019) ............................................................................. 10

*Krottner v. Starbucks Corp.,*
   628 F.3d 1139 (9th Cir. 2010) ................................................................... 4

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) ................................................................... 13

*Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ..................................................................................... 8

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ............................................................................... 4, 5

*Maya v. Centex Corp.*
   658 F.3d 1060 (9th Cir. 2011) ................................................................... 3

*Navarro v. Block,*
    72 F.3d 712 (9th Cir. 1995) ................................................................. 13

*Palmer v. Thompson,*
    403 U.S. 217 (1971) .......................................................................... 12

*Raygor v. Regents of the Univ. of Minn.,*
    534 U.S. 533 (2002) .......................................................................... 17

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ............................................................... 3

*Sato v. Orange Cnty. Dep't of Educ.,*
    861 F.3d 923 (9th Cir. 2017) ................................................................. 3

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) ............................................................................ 4

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ........................................................................... 7

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ................................................................... 4, 7, 8

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ..................................................................... 2, 5

*State v. Cordingley,*
    154 Idaho 762, 302 P.3d 730 (Ct. App. 2013) ........................................ 18

*State v. Heath,*
    168 Idaho 678, 485 P.3d 1121 (2021) ................................................... 18

*United States v. Kozminski,*
    487 U.S. 931 (1988) .......................................................................... 12

*Vandevere v. Lloyd,*
    644 F.3d 957 (9th Cir. 2011) ............................................................... 11

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977) .......................................................................... 13

*Warth v. Seldin,*
  422 U.S. 490 (1975)........................................................................................9

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000)......................................................................3

**Constitutions and Statutes**

Idaho Code § 18-622.....................................................................................16

Idaho Code § 18-622(2) ...............................................................................16

Idaho Code § 18-6101...................................................................................14

Idaho Code § 18-8802(1) .............................................................................16

Idaho Code § 73-402.....................................................................................16

IDAHO CONST. art. I, § 14 .............................................................................11

IDAHO CONST. art. V, § 18 ............................................................................17

28 U.S.C. § 1367 ...........................................................................................17

28 U.S.C. § 1367(c)(1) ..................................................................................17

U.S. CONST. amend XIII, § 1 ........................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(1)..................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................3

**Other Authorities**

Charlie Daniels, *The Devil Went Down to Georgia* Million Mile Reflections
  (Epic Records 1979) .....................................................................................1

C.S. Lewis, *The Screwtape Letters*, Introduction...........................................3

John Milton, *Paradise Lost* ...........................................................................1

*Luke* 8:32-36.................................................................................................1

Satanic Temple, Abortion Clinic Fundraiser
  https://thesatanictemple.com/pages/abortion-clinic-fundraiser ............................. 9

## INTRODUCTION

The Satanic Temple "venerates, but does not worship," the "allegorical" Satan. Am. Compl. ¶ 3. In this case, it has sued to protect one aspect of its "allegorical" veneration: the "Satanic Abortion Ritual." *See Id.* ¶¶ 13–15. This "destruction ritual" requires a pregnant woman to look at her own reflection and recite the following before ending the life of her unborn child:

> *By my body, my blood*
> *By my will, it is done.*

Am. Compl. Ex. A, at 2–4.

Whatever the merits of these verbal conjurations, the abortion part of the ritual violates Idaho law. Idaho laws—now upheld by the Idaho Supreme Court—protect unborn babies by criminalizing most abortions. The Satanic Temple has sued and brings a legion of reasons why it believes Idaho's laws are unconstitutional. It says that Idaho has (1) effected a regulatory taking of the economic value of the womb in violation of the Fifth Amendment; (2) made pregnant women into slaves in violation of the Thirteenth Amendment; (3) given unconstitutional preferences to rape victims in violation of the Fourteenth Amendment; and (4) violated its own religious freedom statutes. But these claims fail utterly.[1]

---

[1] They meet the same fate as the devil in St. Luke's Gospel, John Milton's *Paradise Lost*, and Charlie Daniels' fiddle duel. *See Luke* 8:32–36; John Milton, *Paradise Lost*, Book 1, Stanza 34–37 (1667) ("Th' infernal Serpent; he it was whose guile,/ Stirred up with envy and revenge, deceived/ The mother of mankind, what time his Pride/Had cast him out from Heav'n"); CHARLIE DANIELS, *The Devil Went Down to Georgia*, *on* MILLION MILE REFLECTIONS (Epic Records 1979).

First, the Eleventh Amendment renders Idaho immune from suit in federal court.

Second, the Satanic Temple lacks standing to pursue its claims against individual defendants. It claims to advance the rights of its "involuntarily pregnant" members, but it never identifies these women nor explains how they would have Article III standing. So it lacks associational standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499–500 (2009). Nor has the Satanic Temple pled its own Article III injury—it wants to use its new abortion clinic in New Mexico to give abortions to women in Idaho, but that's not a "legally protected interest" after *Dobbs*. And if it were, the Satanic Temple can't blame Idaho for its spending decisions.

Third, the Satanic Temple's claims fail on the merits. Its constitutional claims cannot stand, particularly under the original meaning interpretation required by *Dobbs*. Protecting unborn children is not a regulatory taking. Pregnancy is not slavery. Special legislative grace to rape victims doesn't violate equal protection. And if the Court keeps jurisdiction over the state-law claims, they fail because they would require a ruling that one Idaho statute invalidates another.

At bottom, the Satanic Temple cannot shoehorn its political and moral disagreements with Idaho's abortion laws into a § 1983 suit. Sure enough, The Satanic Temple's enthusiasm for abortion conflicts with the protections for the unborn in Idaho law. But disagreement with Idaho's legislative decisions does not confer Article III standing or create a colorable constitutional claim. Even at the pleading stage,

the devil is in the details.  The Court should dismiss the Amended Complaint and cast these claims out of federal court.[2]

## LEGAL STANDARD

A motion to dismiss based upon a defendant's Eleventh Amendment sovereign immunity may be brought under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).  *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).  A motion to dismiss based upon a plaintiff's lack of Article III standing is properly brought under Rule 12(b)(1).  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  A Rule 12(b)(1) motion can assert both a facial attack (looking only at the complaint) and a factual attack (reviewing evidence outside the complaint).  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A motion to dismiss under Rule 12(b)(6) may seek dismissal based on "'the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  "A complaint must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (citations and internal quotation marks omitted).

## ARGUMENT

### I.  Sovereign Immunity Bars the Satanic Temple From Suing Idaho.

At the outset, Satanic Temple's Amended Complaint names "the State of

---

[2] While the Satanic Temple emphasizes that it only "venerates, but does not worship" the Satan it deems purely "allegorical," Am. Compl.¶ 3, whether that devil is literal or allegorical, "[t]he best way to drive out the devil … is to jeer and flout him," for he "cannot endure to be mocked."  *See* C.S. Lewis, *The Screwtape Letters*, Introduction (1941) (quoting Martin Luther & Thomas More).

Idaho" as a purported defendant. Am. Compl. 1. But the State of Idaho, of course, cannot be sued in federal court without its consent. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996); *Hans v. Louisiana*, 134 U.S. 1, 13 (1890). Idaho has not waived its sovereign immunity and the Satanic Temple does not allege otherwise. Idaho must be dismissed from this case.

## II. The Satanic Temple Lacks Standing.

The Satanic Temple needs but does not have Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Article III standing requires a plaintiff to show (1) "it has suffered an 'injury in fact'"—an invasion of a legally protected interest that is (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; (2) "the injury is fairly traceable to the challenged action of the defendant"; and (3) the injury will "likely" be "redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan*, 504 U.S. at 560–61. The Satanic Temple "bears the burden of establishing these requirements at every stage of the litigation." *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010). And so at the pleading stage, Satanic Temple "must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). It fails to do so here.

### A. Satanic Temple does not establish associational standing.

Satanic Temple's Amended Complaint focuses on a theory of associational standing based on alleged injuries to non-parties: unidentified "involuntarily pregnant women" who allegedly are Temple members that became pregnant after consensual sex. *See generally* Am. Compl. ¶¶ 8–15, 71–112. Associational standing requires

that (1) one or more of its members would have Article III standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested, requires participation by the individual members in the lawsuit. *Laidlaw*, 528 U.S. at 180–81. Satanic Temple doesn't get past the first step of this test.

The Satanic Temple never identifies any of its members or allege specific facts showing that these unidentified members would have standing. *Summers,* 555 U.S. at 498–500. The Supreme Court requires "plaintiffs claiming" associational standing to "*identify* members who have suffered the requisite harm." *Id.* at 499 (emphasis added); *see also Lujan*, 504 U.S. at 563; *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990). An organization can't establish associational standing by alleging that a law will harm some unidentified members in some unspecified way. *Summers*, 555 U.S. at 498-500; *Laidlaw*, 528 U.S. at 180–81. Satanic Temple assures the Court that these unidentified members exist and would have sued but for fear of "retribution" by "domestic terrorists." Am. Compl. ¶ 7. But this has no merit because those members could have sued anonymously. Because Satanic Temple fails to identify members who will allegedly suffer some harm due to Idaho's laws, it doesn't meet the test for associational standing.

### B. Satanic Temple does not establish its own standing.

Satanic Temple likewise fails to establish standing on its own. It tries to do so in its Amended Complaint by alleging that:

- Satanic Temple "spent a substantial amount of money" to create the "TST clinic," a "telemedicine" abortion clinic in New Mexico that became "operational" on or about February 1, 2023. Am. Compl. ¶¶ 17, 18, 20.

5

- Satanic Temple established the Clinic "in response to the bans on abortion in Idaho and other states." *Id.* ¶ 19.
- The Clinic exists to prescribe abortifacients to Satanic Temple members nationwide and advise members on how to use those abortifacients in the "Satanic Abortion Ritual." *Id.* ¶ 18.
- Satanic Temple has diverted "resources from other programs" to create the "TST clinic." *Id.* ¶ 22.
- "The TST Clinic will" prescribe abortifacients to Idaho women and guide them through the Satanic Abortion Ritual, "provided it can do so lawfully." *Id.* ¶¶ 18, 21.

But these allegations do not establish standing, for many reasons.

### 1. After **Dobbs**, *abortionists no longer have third-party standing to assert an "interest" in helping women abort children.*

Satanic Temple claims that it has an interest in guiding women through "the Satanic Abortion Ritual." *See* Am. Compl. ¶¶ 14, 15, Ex. A. But after *Dobbs v. Jackson Women's Health*, 142 S. Ct. 2228 (2022), would-be abortionists like Satanic Temple don't have a "legally protected interest" in helping women abort their children. *Dobbs* famously overruled the Court's "egregiously wrong" holdings in *Roe v. Wade* and *Casey v. Planned Parenthood* that the Constitution guarantees the right to an abortion. *Id.* at 2243. And as the *Dobbs* court explained, the errors of *Roe* and *Casey* included, among many others, "ignor[ing] the Court's third-party standing doctrine." *Id.* at 2275. In so holding, the *Dobbs* majority cited the dissenting opinions in *June Medical*, which critiqued the Supreme Court's practice of "reflexively allow[ing] abortionists and abortion clinics to vicariously assert a woman's putative right to abortion." *June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2146–47 (2020) (Thomas, J., dissenting); *see also id.* at 2165–71 (Alito, J., dissenting). As Justice Gorsuch explained, a "plaintiff typically must assert an injury to her own legally protected

interests," rather than "the rights of someone else," yet in abortion litigation, "[n]o one even attempts to suggest this usual prerequisite is satisfied." *Id.* at 2173-75 (Gorsuch, J., dissenting). And the only opinion explicitly to hold that abortionists have third-party standing relied entirely on what was then said to be the special constitutional status of abortion. *Singleton v. Wulff*, 428 U.S. 106, 117 (1976). So *Dobbs*, by repudiating that constitutional error and adopting the dissents from *June Medical*, put an end to the sui generis treatment of Article III standing in abortion litigation.

The normal standing rules apply to abortionists again. And under those rules, a plaintiff must allege a particularized injury— "*his* ... rights," rather than "the ... rights of other people." *Spokeo*, 578 U.S. at 339–40 (emphasis added). The Satanic Temple claims injury because certain third parties—unidentified women who became pregnant after consensual sex—can't abort their children in Idaho. But the Temple can no longer claim a "legally protected interest" in other people's ability to abort their unborn children. Because any injury belongs to other people—"an undefined, unnamed, indeed unknown, group of women who they hope will be their patients in the future"—the Satanic Temple cannot establish standing. *See June Med.*, 140 S. Ct. at 2173–74 (Gorsuch, J., dissenting).

### 2. *Satanic Temple's alleged injuries are not imminent or concrete.*

Even if Satanic Temple has a legally protected interest in other people's ability to abort their children, its allegations still wouldn't establish an injury in fact.

First, Satanic Temple's alleged injuries—not being able to assist other people in aborting children—depend on the future, unlawful actions of third parties not

before this Court.  Evidently, it matters a lot to the Temple that its members use the TST clinic's service to kill their unwanted children in utero.  But without a woman willing to use the TST Clinic's services to abort her child, no injury to Satanic Temple will occur.  And the Supreme Court refuses to "endorse standing theories that rest on speculation about the decisions" of third parties, "particularly speculation about [their] future unlawful conduct." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2555–56 (2019); *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  Plus, the Satanic Temple doesn't allege that any women in Idaho would use the services of its nascent clinic in New Mexico, Am. Compl. ¶ 21, or identify any members who would take the Temple up on its offer of free abortions.  This speculative claim is not an actual or imminent injury.  *Laidlaw*, 528 U.S. at 180–81.

Second, the Satanic Temple's alleged "injuries" are not concrete.  *Id.*  "A 'concrete' injury must be '*de* facto'; that is, it must actually exist" and be "real," and not "abstract."  *Spokeo*, 578 U.S. at 340 (cleaned up).  An abstract desire to see the Satanic Abortion Ritual performed by unidentified women is not a concrete injury under *Spokeo*.  And Satanic Temple never alleges that it will lose money, or suffer the loss of some statutory or constitutional right, if it's unable to help its members abort children in Idaho.  So it fails the "concreteness" requirement of the injury in fact test, too. *Id.*

### 3. Satanic Temple's decision to spend money on its New Mexico clinic is not traceable to Idaho.

The Satanic Temple also claims that it spent "a substantial amount of money" to "establish" its clinic in New Mexico.  Am. Compl. ¶ 17.  But Idaho doesn't dictate

how the Satanic Temple allocates its funds. Idaho didn't require Satanic Temple to spend its money on a "telemedicine" abortion clinic in New Mexico. Satanic Temple alone made that choice. If this is an injury, it's a self-inflicted one. Satanic Temple also seems to think the Clinic, which it has named "The Samuel Alito's Mom's Satanic Abortion Clinic," will help it raise funds.[3] But again, Satanic Temple can't blame Idaho for expenses it incurs due to its own business decisions and donor outreach campaigns. These "self-inflicted injuries are not fairly traceable" to Idaho, and they don't give rise to standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).

### 4. The unincorporated association before the Court lacks standing as to claims regarding the clinic.

Aside from the lack of injury or lack of injury traceable to the State, the plaintiff before the Court is an unincorporated association, "The Satanic Temple." *See* Am. Comp. ¶ 1. Yet it is "The Satanic Temple, Inc.," a Massachusetts nonprofit corporation, that has registered in New Mexico a Doing-Business-As Name of "Samuel Alito's Mom's Satanic Abortion Clinic Inc. / TST Health Inc."[4] So the wrong plaintiff is before the Court, to the extent The Satanic Temple claims injuries to its clinic. This adds yet another additional layer of distance between the Satanic Temple and the "injuries" it alleges. Again, a plaintiff cannot rest its claims to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

---

[3] *See* https://thesatanictemple.com/pages/abortion-clinic-fundraiser.

[4] The Court can take judicial notice of this fact by visiting the New Mexico Secretary of State online, https://tinyurl.com/ysn7jpbb: Corporation and Business Services, Business Search page, enter "The Satanic Temple" as the "Entity Name/DBA Name," and check the "Contains" radio button. The search will return a result for "Business ID# 7035080." *See* Def's. Ex. A.

### III.  Satanic Temple Fails to State a Claim for Relief.

If the Court reaches the merits, it should dismiss each of Satanic Temple's four claims.  Apart from the specific doctrinal requirements of the three constitutional claims in this case, they fail under the interpretive framework that *Dobbs* re-affirmed—that "[c]onstitutional analysis must begin with 'the language of the instrument,' ... which offers a 'fixed standard' for ascertaining what our founding document means." *Dobbs*, 142 S. Ct. at 2244–45 (citation omitted).  That analysis turns on what the Constitution's explicit text, as informed by history, would have been understood to mean at the time it was adopted.  *Id.* at 2249–56.  This original meaning understanding dooms each of the Satanic Temple's constitutional claims.

### A. The takings claim must be dismissed.

The Satanic Temple's first claim is that Idaho's abortion laws violate the Fifth Amendment's Takings Clause by preventing unidentified women from aborting their children, thus depriving them of the economic interest in their own wombs.  *See* Am. Compl. ¶¶ 76–84.  This claim fails on several levels.

#### 1. *Satanic Temple can't seek an equitable remedy on its takings claim in federal court.*

The first problem with the Satanic Temple's takings claim is its request for injunctive relief.  *See* Am. Compl. 17, Prayer for Relief.  When a plaintiff has a state remedy to provide just compensation for a taking, it cannot obtain equitable relief in federal court.  *Knick v. Twp. Of Scott, Pa.,* 139 S. Ct. 2162, 2176–77, 2179 (2019).  Idaho law provides a compensatory remedy through an inverse condemnation action.  *See KMST, LLC v. Cnty. Of Ada*, 138 Idaho 577, 581 (2003) (citation omitted); *see also*

IDAHO CONST. art. I, § 14.  Even a colorable takings claim would have to be pled in state court, for damages, not in federal court for injunctive relief.

### 2. Idaho's abortion laws don't take property without just compensation.

A plaintiff raising a Fifth Amendment takings claim must show that it has a property interest and that Idaho's expropriation of that interest constitutes a Fifth Amendment "taking" requiring compensation. *Vandevere v. Lloyd*, 644 F.3d 957, 963 (9th Cir. 2011).  The Satanic Temple defines the relevant property interest as a woman's "property right … to exclude or remove a Prenatal Person from her uterus." Am. Compl. ¶ 77.  But Satanic Temple identifies no such property right under Idaho or federal law, for there is none.  Nor would the Framers of the Fifth Amendment have understood the Takings Clause to protect a compensated "property interest" in excluding children from the womb by aborting them.  To the contrary, as *Dobbs* observed, they universally criminalized the conduct that the Satanic Temple now frames as a property right.  *Dobbs*, 142 S. Ct. at 2248–49.  The Court should dismiss the takings claim.

### B. By protecting unborn lives, Idaho does not force women into "involuntary servitude."

The Satanic Temple next claims that Idaho's abortion laws subject unidentified women to "involuntary servitude" in violation of the Thirteenth Amendment.  *See* Am. Compl. ¶¶ 85–94.  But pregnancy is not "involuntary servitude" within the meaning of the Thirteenth Amendment.  That Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject

11

to their jurisdiction."  U.S. CONST. amend XIII, § 1 and that "Congress shall have power to enforce this article by appropriate legislation."  *Id.*, § 2.  In short, the Thirteenth Amendment "abolished slavery," *Civil Rights Cases*, 109 U.S. 3, 20 (1883), and "those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (citation omitted).  The comparable forms of prohibited labor include peonage, forced labor under a criminal surety system, and requiring debtors to labor under threat of prosecution.  *Id.* at 943.  But at ratification, no one thought that banning abortion subjected women to "involuntary servitude" comparable to slavery. Again, as *Dobbs* explains, "[b]y the time of the adoption of the Fourteenth Amendment,"—less than three years after adoption of the Thirteenth Amendment—"three-quarters of the States had made abortion a crime at any stage of pregnancy, and the remaining States would soon follow." *Dobbs*, 142 S. Ct. at 2248–49.  Women are not akin to victims of slavery because they cannot abort a child they conceived through consensual sex.  "To reach that result from the Thirteenth Amendment would severely stretch its short simple words and do violence to its history." *Palmer v. Thompson*, 403 U.S. 217, 226 (1971).

### C.  Idaho's abortion laws don't violate equal protection because they exempt rape victims.

The Satanic Temple next claims that by favoring victims of rape, Idaho law violates the Equal Protection Clause by discriminating against "women who are pregnant by accident" because of faulty birth control.  Am. Compl. ¶ 101; *see also* ¶¶ 88, 91.  But at bottom, this is just another attempt to recognize a constitutional right to

abortion.  Idaho's laws don't prevent consenting adults from engaging in sex.  They prevent abortion.  Because there is no constitutional right to abortion, the States are free to regulate it as they see fit.  *Dobbs*, 142 S. Ct. at 2284–85.  This claim meets the same end as it did in *Dobbs*.  Likewise, under a doctrinal framework, this claim fails all three steps of an equal protection analysis: (1) it lacks a cogent classification; (2) it does not identify a control group of individuals similarly situated in respects relevant to the challenged policy; and (3) it does not identify and apply the appropriate level of scrutiny.  *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018).  Under the appropriate level of scrutiny—rational basis review—Idaho's laws plainly advance the State's legitimate interests.

### 1. Satanic Temple hasn't identified a cogent classification.

An Equal Protection claim requires the plaintiff to "show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citations omitted).  Discriminatory intent requires more than just a foreseeably disproportionate impact on an identifiable group or even awareness of consequences—it requires that a course of action was chosen, at least in part, *because of* its adverse effects upon the identifiable group, not merely in spite of them.  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Navarro v. Block*, 72 F.3d 712, 716 n.5 (9th Cir. 1995)).  Only when invidious or discriminatory purpose underlies the policy will there be the requisite discriminatory intent to state an equal protection claim.  *Id.* at 686 (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977)).

Nothing in the Amended Complaint bears on this point.  While Satanic Temple's original complaint made conclusory assertions that Idaho's pro-life laws were a "pretext" for discrimination against women who engage in consensual sex, *see* Compl. ¶ 86, the Amended Complaint wisely removes this assertion and never alleges that the Legislature acted with discriminatory intent.  *See generally* Am. Compl.  The Satanic Temple's equal protection claim fails at the outset.

### 2. *Women who engage in consensual sex are not similarly situated to victims of rape.*

It should go without saying that rape victims are not similarly situated to women who "engage in sex just for the pleasure and intimacy it brings."  Am. Compl. ¶¶ 96–102.  Under the similarly situated analysis, "[t]he groups need not be similar in all respects, but they must be similar in those respects relevant to the Defendants' policy."  *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014) (cleaned up).  Rape victims became pregnant as the result of a vile, criminal act to which they did not consent, or were incapable of consenting to.  Idaho Code § 18-6101.  Rape is, short of homicide, "the ultimate violation of self"; it displays "total contempt for the personal integrity and autonomy of the female victim."  *Coker v. Georgia*, 433 U.S. 584, 597–98 (1977).

The Idaho Legislature was well within its police power to weigh the welfare of rape victims along with the life of the unborn when drafting and enacting the challenged statutes.  "Abortion presents a profound moral issue ... others in a third group think that abortion should be allowed under some but not all circumstances," and "the power to weigh those arguments" would be returned "to the people and their elected representatives."  *Dobbs*, 142 S. Ct. at 2240, 2259.  For purposes of a policy

14

that weighs the various interests in the life of the unborn and the welfare of rape victims, a rape victim is not substantially similar to a person who engaged in consensual sex.

### 3.  Idaho's decision to allow an exception for rape is rationally related to a legitimate government interest.

Finally, Idaho's abortion laws easily survive the rational basis scrutiny to which they are subject under the Equal Protection Clause. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004). Strict scrutiny applies to suspect classifications, such as race, or when a law burdens a fundamental right; intermediate scrutiny applies to quasi-suspect classifications, like sex or gender; and rational basis applies when no suspect class is involved, and no fundamental right is burdened. *Id.* at 1277–78. Plainly, the category of "women who engage in sex just for the pleasure and intimacy it brings" is not a suspect or quasi-suspect class—nor does Satanic Temple so allege. And no fundamental right is at issue. So rational basis applies here. *Dobbs*, 142 S. Ct. at 2284.

Idaho law easily survives that standard. "A law regulating abortion, like other health and welfare laws, is entitled to a 'strong presumption of validity' .... It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id.* (citations omitted). Such "legitimate interests include respect for and preservation of prenatal life at all stages of development," protecting "maternal health and safety," eliminating "particularly gruesome or barbaric medical procedures," preserving the "integrity of the medical profession," and preventing "fetal pain." *Id.* (citations omitted). Idaho's abortion laws advance

all of these interests.  Among other things, Idaho's Legislature passed The Fetal Heartbeat Act and Idaho Code § 18-622(2) to protect human life, which "begins at fertilization."  Idaho Code § 18-8802(1).  The rape exception in Idaho Code § 18-622 and the Fetal Heartbeat Act "must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Dobbs*, 142 S. Ct. at 2284.  The laws plainly relate to the State's legitimate interests in protecting the life of unborn children and preventing fetal pain.  Trying to duck rational basis review, Satanic Temple recasts its equal protection claim as an attempt to protect the "fundamental right to use contraception and engage in sex just for the pleasure and intimacy it brings."  Am. Compl. ¶ 96.  But that is not the "right" at issue.  Idaho has no law against consensual "sex" between adults "just for the pleasure and intimacy it brings."  This case is about abortion, from start to finish.  Am. Compl. ¶ 102.  And there is no fundamental right to abortion.  *Dobbs*, 142 S. Ct. at 2279.  And, again, at ratification, no one thought the Fourteenth Amendment created a constitutional right to abortion.  To the contrary, "three-quarters of the States had made abortion a crime at any stage of pregnancy, and the remaining States would soon follow."  *Dobbs*, 142 S. Ct. at 2248–49.  Therefore, rational basis review applies, and the Satanic Temple's challenge fails.

### D.  The Court lacks jurisdiction over Satanic Temple's state law claim.

Rather than pleading violations of federal constitutional provisions regarding free exercise of religion, Satanic Temple alleges that Idaho's abortion laws violate an older state statute, Idaho Code § 73-402, "the Free Exercise of Religion Protection Act."  There are multiple problems with this claim that demand its dismissal.

16

First, the State, Attorney General Labrador, and Ada County Prosecutor Bennetts have immunity from these claims under the Eleventh Amendment. *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018). The *Ex parte Young* exception to sovereign immunity does not apply to claims for relief under state law. *Id.* So the State, Attorney General Labrador, and Ada County Prosecutor Bennetts[5] have sovereign immunity as to Satanic Temple's state-law claim.

Second, The Satanic Temple asserts this Court has jurisdiction over the state-law claim under 28 U.S.C. § 1367. Am. Compl. ¶ 36. Yet that provision "does not extend to claims against nonconsenting state defendants." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002). None of the defendants consent to such jurisdiction. So this Court lacks jurisdiction under 28 U.S.C. § 1367.

Third, even if the Court believed it could exercise supplemental jurisdiction, it should dismiss these state-law claims as a matter of discretion since it makes little sense to retain supplemental jurisdiction when all federal claims fail. *See* 28 U.S.C. § 1367(c)(1); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Judicial economy, convenience, fairness, and comity are factors to be considered, and when

---

[5] Prosecutor Bennetts was sued because she enforces the State's abortion laws. Am. Compl. ¶ 27. Thus, the claim against her is in her capacity as a state actor. In Idaho, a county prosecutor prosecuting a defendant is acting as an officer of the State's judicial department "exercising the State's inherent sovereign power to prosecute crime." *Hooper v. State*, 150 Idaho 497, 500, 248 P.3d 748, 751 (2011); IDAHO CONST. art. V, § 18; *cf. Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1070-71 (C.D. Cal. 2012) (citing Ninth Circuit precedent concerning California's district attorneys, who are considered state officials when performing prosecutorial functions).

the federal law claims have been eliminated, the balance of factors "will point toward declining to exercise jurisdiction over the remaining state law claims." *Bymun v. City of Kimberly*, No. 1:20-cv-00171-DCN, 2021 WL 2370977, at *2 (D. Idaho June 9, 2021) (citation and internal quotation marks omitted).  Not only that, but claims under Idaho's Free Exercise of Religion Protection Act present "difficult and delicate" questions of fact, including whether a person's convictions are "religious beliefs" under the Free Exercise Act, or philosophical, political, or ideological beliefs to which the Free Exercise Act does not apply.  *State v. Heath*, 168 Idaho 678, 685, 485 P.3d 1121, 1128 (2021) (citing *State v. Cordingley*, 154 Idaho 762, 767, 302 P.3d 730, 735 (Ct. App. 2013)).  The Idaho Supreme Court has not yet announced how this inquiry is carried out, but the Idaho Court of Appeals has used a complicated 14-factor test asking whether the asserted "religion" contains certain indicia.[6]  *Cordingley*, 154 Idaho at 769, 302 P.3d at 737.  The Court should allow Idaho's state courts to resolve this issue.

Fourth, in any event, the Satanic Temple's state-law claims fail because they are premised on the notion that one Idaho statute—its abortion law—is invalid under an older Idaho statute.  This not viable because one session of the Idaho Legislature

---

[6] There are five main factors: (1) ultimate ideas; (2) metaphysical beliefs; (3) moral or ethical system; (4) comprehensiveness of beliefs; and (5) accoutrements of religion. Factor (5) contains ten sub-factors: (a) founder, prophet, or teacher; (b) important writings; (c) gathering places; (d) keepers of knowledge; (e) ceremonies and rituals; (f) structure or organization; (g) holidays; (h) diet or fasting; (i) appearance and clothing; and (j) propagation. *Cordingley*, 154 Idaho at 769, 302 P.3d at 737 (citation omitted).

cannot deprive a future session of the Idaho Legislature from enacting laws in accordance with its constitutional power.  *See Johnson v. Deifendorf*, 56 Idaho 620, 57 P.2d 1068, 1075 (1936).  A statute might violate state or federal constitutions, but it cannot be invalidated because of an alleged conflict with another statute.  After *Dobbs*, Idaho decided to protect unborn children and criminalize most abortions.  And while that may make the Satanic Temple unhappy, it does not violate the Constitution.  The Satanic Temple's claims should be dismissed.

## CONCLUSION

*Dobbs* returned decisions about the "profound moral question" of abortion "to the people and their elected representatives."  142 S. Ct. at 2284.  Satanic Temple would like to undo *Dobbs* by constitutionalizing abortion and removing it from the democratic process once again.  But it lacks standing to do so and its legal claims are meritless.  This Court should dismiss the Amended Complaint.

DATED:  March 14, 2023.

> STATE OF IDAHO
> OFFICE OF THE ATTORNEY GENERAL
>
>
> By:     /s/ Lincoln Davis Wilson
>         LINCOLN DAVIS WILSON
>         Chief, Civil Litigation and Constitutional Defense
>         Deputy Attorney General
>         BRIAN V. CHURCH
>         Deputy Attorney General

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jeremiah M. Hudson
Fisher Hudson Shallat
jeremiah@fisherhudson.com

W. James Mac Naughton
wjm@wjmesq.com

/s/ *Lincoln Davis Wilson*
LINCOLN DAVIS WILSON
Deputy Attorney General