# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

THE SATANIC TEMPLE, INC.,          )
                                   )
               *Plaintiff,*        )
                                   )
       v.                          )          No. 1:22-cv-01859-JMS-MG
                                   )
TODD ROKITA, in his capacity as    )
Attorney General of Indiana, and   )
RYAN MEARS, in his capacity as     )
Marion County Prosecutor,          )
                                   )
               *Defendants.*       )

## **ORDER**

The Satanic Temple, Inc. ("the Satanic Temple") seeks to provide mail-order drugs for its members in Indiana to have abortions. Indiana, however, criminalizes most abortions. Ind. Code § 16-34-2-1(a) ("S.B. 1"). The Satanic Temple has sued Attorney General Todd Rokita and Marion County Prosecutor Ryan Mears ("Defendants"), seeking injunctive and declaratory relief on behalf of itself and its members who have become pregnant involuntarily ("Members"). The Satanic Temple alleges that S.B. 1 violates the Indiana Religious Freedom Restoration Act ("RFRA") by prohibiting its Members from performing its Satanic Abortion Ritual; the Fifth Amendment by committing a taking of its Members' uteruses; the Fourteenth Amendment by discriminating against its Members who become pregnant unintentionally in favor of women who become pregnant by rape or incest; and the Thirteenth Amendment by forcing upon its Members the conditions of slavery. Defendants have filed a Motion to Dismiss the First Amended Complaint for failure to state a claim and lack of standing. [Filing No. 36.] The Motion is ripe for the Court's review.

1

EXHIBIT
A

# I.
## STANDARD OF REVIEW

The Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. The case-or-controversy requirement counts the element of standing as one of its essential components. *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The fundamental requirements of standing are the same in every case: injury in fact, causation, and redressability. *Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014).

Generally, while reviewing a motion to dismiss for lack of standing, the district court "must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor" as a facial matter. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015). The general rule permits an exception to these favorable presumptions, which arises where "standing is challenged as a factual matter." *Id.* Once evidence calling the plaintiff's standing into question is proffered, "[t]he presumption of correctness that we accord a complaint's allegations falls away[.]" *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citation omitted). Then, "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). And "the plaintiff bears the burden" of demonstrating standing by "coming forward with competent proof.'" *Id.* (quoting *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003)). "[C]ompetent proof" means a showing by a "preponderance of the evidence." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citations omitted).

Further, when the factual prerequisites of jurisdiction are at stake, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Apex Digital*, 572 F.3d at 444 (quoting *Mortensen*, 549 F.2d at 891). A

district court may "resolve factual disputes and make any findings necessary to determine the court's adjudicatory competence." *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019) (citing *Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017)). Beyond only the pleadings, "the court may . . . view any evidence submitted to determine if subject matter jurisdiction exists." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). When the standing question involves disputed factual matters, "the district court may find the facts," and it is "review[ed] . . . for clear error." *Reid L. v. Illinois State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).

As a factual matter, Defendants challenge the Satanic Temple's standing in two ways. First, Defendants argue that the Satanic Temple does not show that "anyone would use it to procure abortions." [Filing No. 37 at 8.] Second, Defendants argue that the Satanic Temple does not show that its clinic "exists or is reasonable likely to exist in the near future." [Filing No. 37 at 7.] These disputed facts are at the heart of the injury-in-fact inquiry, the "[f]irst and foremost" element of standing. *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). Consequently, the Satanic Temple bears the burden to prove those disputed facts by a preponderance of the evidence. In this light, the Court presents the case's background and conducts the Court's analysis.

## II.
### BACKGROUND

### A.    Federal and State Laws Regulating Telehealth Abortions

Multiple sources of law impose restrictions on providing abortion-inducing drugs by mail. Federally, the Comstock Act of 1873, still in force today, makes it a criminal offense to mail any "article or thing designed, adapted, or intended for producing abortion." 18 U.S.C. § 1461

("Mailing obscene or crime-inciting matter").  A first offense against the Comstock Act can lead to imprisonment for up to five years; for each subsequent offense, up to ten years.  *Id.*

In Indiana, as early as 2013, if a physician were permitted to administer an abortion, the "physician [must have] examine[d] [the] pregnant woman in person before prescribing or dispensing an abortion inducing drug"; "'in person' d[id] not include the use of telehealth or telemedicine services."  Ind. Code § 16-34-2-1(a) (2013).  Likewise, as early as 2013, abortion clinics were required to seek licensure in the state.  Ind. Code § 16-21-2-2.5 (2013) ("Adoption of rules concerning birthing centers and abortion clinics; violations as to unlicensed facilities").  A person who "knowingly or intentionally . . . operate[d] . . . an abortion clinic that [was] not licensed" committed a Class A misdemeanor.  *Id.* § (c).  In 2022, Indiana enacted into law S.B.1, which, with little exception, criminalizes most abortions in the state.  Ind. Code § 16-34-2-1(a) (2022).  All of those restrictions remain the law today.

### B.    The Satanic Temple's Telehealth Abortion Clinic

The Satanic Temple, in its own words, "venerates, but does not worship, the allegorical Satan described in the epic poem Paradise Lost – the defender of personal sovereignty against the dictates of religious authority."  [Filing No. 21 at 1-2.]  Members of the Satanic Temple adhere to the Satanic Temple's Tenets, including Tenet III: "One's body is inviolable, subject to one's own will alone."  [Filing No. 21 at 2.]  The Satanic Temple promotes its Tenets by "protecting the exercise of [the Tenets] from government intrusion."  [Filing No. 21 at 2.]  Such promotion includes providing access to abortions.

In late 2022, the Satanic Temple formed an abortion clinic, called the "Samuel Alito's Mom's Satanic Abortion Clinic" ("the Clinic").  [Filing No. 37-2]; *see generally* Formation Records, Corporations and Business Services, N.M. Secretary of State, https://portal.sos.state.nm.us/BFS/online/corporationbusinesssearch (Business ID#: 7035080).

The Clinic supports the Satanic Temple's effort to create a wider health network. *TST Health*, https://www.tsthealth.org/. The Clinic "does not maintain an office or other physical space," but through online telehealth, it serves patients who are physically located in New Mexico: To receive the Clinic's services, an individual must be "[i]n New Mexico at the time of the online visit," "[h]ave a New Mexico mailing address," and "receive the [abortion-inducing drugs] in New Mexico." *Id.*; [Filing No. 50-1 at 1.] The Clinic allegedly seeks to extend beyond the borders of New Mexico to reach the State of Indiana. [Filing No. 21 at 14-15.] In Indiana, the Clinic allegedly would help Members perform the Satanic Abortion Ritual. [Filing No. 21 at 14-15.]

The Satanic Abortion Ritual is a ritual of "destruction." [Filing No. 21-1 at 2.] It is designed to "cast off notions of guilt, shame, and mental discomfort" regarding having an abortion. [Filing No. 21-1 at 2.] The Ritual invites its Members to consult materials representing "great sacrifices in the struggle to establish reproductive rights" in order to "subdue stigmas" the patient "might feel from those who oppose abortion." [Filing No. 21-1 at 3.] As the Member induces her abortion, she is urged to read the Satanic Tenets aloud. [Filing No. 21-1 at 5.]

### C.    This Litigation

On September 21, 2022, on behalf of its Members and in its own right, the Satanic Temple sued Governor Eric Holcomb and Attorney General Todd Rokita to enjoin S.B. 1. [Filing No. 1.] Governor Holcomb and Attorney General Rokita filed a Motion to Dismiss, [Filing No. 17,] arguing, among other things, that the Satanic Temple lacked standing. [Filing No. 18 at 6-8.] The Satanic Temple then amended its Complaint. [Filing No. 21.] The First Amended Complaint no longer named the Governor as a Defendant but added Marion County Prosecutor Ryan Mears as a Defendant. [Filing No. 21 at 1.] Acknowledging this amendment, the Court then denied the earlier Motion to Dismiss as moot, leaving the First Amended Complaint the operative pleading. [Filing No. 27 at 1.]

5

The Satanic Temple's First Amended Complaint attacks only S.B. 1. [Filing No. 21 at 4.]. Alleging that it intends to provide abortions to Members in Indiana, the Satanic Temple states that S.B. 1 unlawfully interferes with the rights of its Members. The Satanic Temple claims that S.B. 1:

- violates the Indiana Religious Freedom Restoration Act by preventing a Member from exercising her Satanic Tenet-based religious beliefs to have an abortion, [Filing No. 21 at 14];

- further violates the Indiana Religious Freedom Restoration Act by imposing a substantial burden on the exercise of the Satanic Abortion Ritual, [Filing No. 21 at 15];

- violates the Equal Protection Clause by providing no exceptions for those who are pregnant by accident, and discriminating in favor of those who are pregnant by rape or incest, [Filing No. 21 at 13-14];

- violates the Takings Clause by providing no compensation for the value of occupying a woman's reproductive system, "taking" the right to otherwise use a woman's uterus, [Filing No. 21 at 10-11]; and

- violates the Thirteenth Amendment by providing no compensation to an involuntarily pregnant woman for "providing the labor necessary to give birth," imposing on such women the conditions of slavery, [Filing No. 21 at 12-13].

Likening its cause to historical litigation by the National Association for the Advancement of Colored People, the Satanic Temple has maintained its suit on behalf of its Members in secrecy. [Filing No. 44 at 20 (citing *NAACP v. Alabama*, 357 U.S. 449, 459 (1958))]. Its Members are unnamed; its declarations are under pseudonym; and its executive director is unidentified, "not disclos[ing] [his/her] real name" for fear of "domestic terrorists." [Filing No. 44-1 at 1.] The Satanic Temple justifies the suit's secrecy based on the leak preceding the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. ---, 142 S. Ct. 2288 (2022); the alleged leak of confidential information by Attorney General Rokita in a prior abortion case; and the Satanic Temple's prior exposure to violence. [Filing No. 45 at 3.] "[E]ven [for] high government officials," the Satanic Temple asserts, "the passions stirred up by the culture war over abortion can overcome . . . good judgment." [Filing No. 45 at 3.]

The fact that the Satanic Temple (1) does not name the Members on whose behalf it brings this suit and (2) lacks a current Indiana abortion clinic are both at the center of Defendants' Motion to Dismiss for failure to state a claim and lack of standing. [Filing No. 36.] In their briefing, Defendants argue that the Court should permit "jurisdictional discovery as to whether The Satanic Temple has standing." [Filing No. 37 at 13.] To that end, the parties submitted evidence, including affidavits and declarations, filings and exhibits, and interrogatories and admissions. The Court also ordered supplemental briefing on how recent Supreme Court decisions affect the Satanic Temple's standing. [Filing No. 53.] Throughout the standing analysis, the Court will turn its attention to the submitted evidence and supplemental briefing that is relevant to the case's ultimate resolution.

The threshold question in this case, as in every case, is the power of the Court to entertain the lawsuit; accordingly, motions that challenge that power are dealt with first. *See Vt. Agency of Nat. Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 778 (2000). Accordingly, the Court turns first to the parties' arguments regarding standing.

### III.
#### DISCUSSION

"Of one thing we may be sure," the Supreme Court has stated, "[t]hose who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Love Church v. City of Evanston*, 896 F.2d 1082, 1084 (7th Cir. 1990) (quoting *Valley Forge Coll. v. Amns. United for the Separation of Church & State*, 454 U.S. 464, 475-76 (1982)). To have standing for "injunctive relief, a plaintiff must show that [s]he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.,* 555 U.S. 488,

493 (2009) (citation omitted). An organization can assert standing either on behalf of its members or in its own right. The Satanic Temple asserts both.

### A. Standing on Behalf of the Satanic Temple's Members

Defendants argue that the Satanic Temple does not have associational standing because it has not identified its Members. [Filing No. 37 at 10.] Defendants argue that the Satanic Temple "does not specify how many female members are pregnant, whether the members who were pregnant 9 months ago are still pregnant despite the passage of time, whether the women can take advantage of S.B. 1's exceptions, and whether the women still need relief given that a state court enjoined S.B.1." [Filing No. 37 at 11.] The State notes that the Satanic Temple "has not identified its members, sued on behalf of particular members, filed declarations from them, or given them an opportunity to direct the course of the litigation." [Filing No. 56 at 6.] Consequently, Defendants assert, the Satanic Temple cannot show that it "'has identified members and represents them in good faith,' much less that unidentified members have standing to sue." [Filing No. 56 at 6 (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2158 (2023)).] In the place of identified members, the State continues, the Satanic Temple cannot resort to using statistical probability. [Filing No. 37 at 10-11.]

In response, the Satanic Temple argues that "no authority requires that identity be made by name." [Filing No. 44 at 19.] The Satanic Temple states that it proceeds on behalf of its Members anonymously because "neither the Court nor Defendants can guarantee their identity will remain secret." [Filing No. 44 at 19 n.16.] Further, the Satanic Temple argues that the First Amendment grants members a "right to keep his or her membership" in the Satanic Temple a "secret." [Filing No. 44 at 20.] As a legitimate organization, the Satanic Temple argues, it includes the "involvement of its members in its programs and funding," supporting the fact that it is "representing its members in good faith." [Filing No. 57 at 6.] In the place of identification, the

8

Satanic Temple offers a statistics-based declaration as "the requisite proof" that ninety-four Members of the Satanic Temple will be "individually harmed by the Indiana Abortion Ban every year and at least one" is "pregnant at any given point in time." [Filing No. 44 at 20.]

In reply, Defendants reiterate that the Satanic Temple "has never identified a single member with standing. In fact, it has refused to identify the member(s) it believes provides a basis for standing." [Filing No. 51 at 4.] Further, Defendants assert that an organization cannot establish standing through statistical probability; without specific facts to support identifiable members, the State argues, the Satanic Temple "has failed to meet its burden" to support each disputed element of standing with "competent proof." [Filing No. 51 at 4.]

In general, a plaintiff must assert "her own legal rights, not those of a third party." *Freedom from Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1468 (7th Cir. 1988). That general rule permits an exception – for "associational standing" on behalf of the plaintiff organization's members. An organization has associational standing when:

    a) its members would otherwise have standing to sue in their own right;

    b) the interests it seeks to protect are germane to the organization's purpose; and

    c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1976). For the first prong, whether a member would have standing to sue in her own right, the Supreme Court has cautioned that allegations of injury must be "specific" to an "identified member." *Earth Island Inst.*, 555 U.S. at 498.

The Satanic Temple argues that it need not identify specific Members because the First Amendment allows each Member not to disclose her affiliation, citing *NAACP v. Alabama*, 357 U.S. 449, 459 (1958). [Filing No. 44 at 20.] Yet the Supreme Court has explained that such anonymity is permitted "only where all the members of the organization are affected by the

challenged activity." *Earth Island*, 555 U.S. at 498-99 (emphasis omitted). Here, the challenged abortion law allegedly affects only some, but not all, of the Satanic Temple's Indiana membership, only ninety-four out of over 11,000 members. [Filing No. 44-2 at 3 (ninety-four); Filing No. 44-1 at 3 (over 11,000).] Further, in *NAACP*, the organization was willing to "divulg[e] the identity of its members who . . . [held] official positions." *NAACP*, 357 U.S. at 464. Here, the Satanic Temple is not willing to divulge any such identity. Its "Executive Director" hides "[his/her] real name" for fear of "domestic terrorists." [Filing No. 44-1 at 1.][1]

The Satanic Temple then quotes the Seventh Circuit as stating, "the requirement for an individual member to have standing still allows for the member on whose behalf the suit is filed to remain unnamed by the organization." [Filing No. 44 at 19 (quoting *Prairie Rivers Network*, 2 F.4th at 1011).] That statement is correctly quoted, but its context is improperly omitted. In the very next sentence, the Seventh Circuit observed that in light of Supreme Court precedent, it would "reserve for another day whether that statement survives." *Prairie Rivers Network v. Dynegy*

---

[1] The Court takes seriously the potential risks of retribution faced by unpopular parties accessing the judicial system. For that reason, the Court provides a mechanism that parties must use to request leave to proceed under a pseudonym. S.D. Ind. L.R. 10-1. Utilizing the organization itself as a functional pseudonym is no replacement for abiding by the requirements imposed by Local Rules and within the guidelines of the Seventh Circuit. *Id.* ("This rule provides a vehicle for a litigant's identity to be disclosed to the court and to the opposing party but not to the public at large pending the outcome of the court's determination of whether the litigant is entitled to proceed anonymously."); *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) ("The danger of retaliation is often a compelling ground for allowing a party to litigate anonymously."); *see also Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 139-40 (S.D. Ind. 1996).

It is possible for a litigant to proceed anonymously while concurrently providing specific allegations. *See, e.g., John Doe, formerly known as Jane Doe v. Holcomb*, 883 F.3d 971, 974-75 (7th Cir. 2018) (transgender immigrant proceeded under pseudonym providing specific allegations for suit against state actor to legally change name). This should be no surprise to the Satanic Temple; its members have litigated under pseudonym in prior proceedings. *E.g., Doe v. Parson*, 960 F.3d 1115 (8th Cir. 2020) (Satanic Temple member who intended to have abortion sued using pseudonym in suit for declaratory judgment against informed consent law).

10

*Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021); *see Earth Island*, 555 U.S. at 498-99. The Seventh Circuit then referred to sister circuits which "expressly require names for associational standing on the pleadings." *Id.* (citing *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J., sitting by designation); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)).

Although the Satanic Temple must identify individual Members specifically, the Satanic Temple attempts to identify them statistically, based on the work conducted by "Dr. J.D." [Filing No. 44-2 at 1.] Though identified to the Court, Dr. J.D, like the alleged Members of the Satanic Temple, is not identified to the public. [Filing No. 44-2 at 1.] Dr. J.D. is not employed by, or contracted with, the Clinic; when asked to identify such licensed physicians, the Satanic Temple answered "none." [*See* Filing No. 50-2 at 2.] Dr. J.D. appears to have no personal knowledge of the Satanic Temple's members; the doctor is simply "advised" of the Satanic Temple's procedures. [*See, e.g.*, Filing No. 44-2 at 4.] Based on being advised of these procedures, Dr. J.D. estimates the number of injured Members using the following average metrics: the number of Satanic Temple Members of child-bearing age; the 2017 Indiana fertility rate; the 2021 Indiana abortion rate; the percentage of pregnancies that are unintentional; and the percentage of pregnancies that occur due to failure of birth control. [Filing No. 44-2 at 2-3.] "[T]o a reasonable degree of medical certainty," Dr. J.D. opines, at least one member the Satanic Temple is involuntarily pregnant each year. [Filing No. 44-2 at 3.]

These calculated allegations do not inspire confidence. Most basically, a population average does not guarantee an individual result. It is statistically possible for the average number of pregnancies to be greater than zero, and for exactly zero Members to be pregnant. Additionally,

even if these calculations were accurate, the result does not foreclose the possibility that someone who is involuntarily pregnant might voluntarily decide to bring her pregnancy to term.

The ambiguity inherent in the Satanic Temple's analysis illustrates the exact difficulty the Supreme Court has cautioned to avoid: "In part because of the difficulty of verifying the facts upon which such probabilistic standing depends," the Supreme Court "has required plaintiffs claiming organizational standing to identify members who have suffered the requisite harm—surely not a difficult task" when there are allegedly so many members. *Earth Island Inst.*, 555 U.S. at 499. The Supreme Court has unequivocally prohibited statistical standing lest "[t]his novel approach to the law of organizational standing . . . make a mockery of [the Supreme Court's] prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm," which requires "naming the affected members." *Id.* at 498-99.

Even if it were "possible–perhaps even likely–that one individual w[ould] meet" the criteria of standing, speculation through statistics is no replacement for specifics. *Id.*; *see, e.g.*, *Prairie Rivers Network*, 2 F.4th at 1009-10 (holding no associational standing for environmental-rights organization that failed to identify "who [its] members [were] or how exactly" they would have been harmed); *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 625 (7th Cir. 2019) (holding no associational standing for home-sharing rights organization that left "the record . . . unclear whether any of the six named plaintiffs remain members"); *Disability Rights Wis. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008) (holding no associational standing for disability-rights organization that failed to identify a specific student who would be harmed).

Although standing is permissible for "abortion providers to invoke the rights of their actual or potential patients in challenges to abortion-related regulations," the Satanic Temple has failed

to meet its burden to prove that there are actual or potential Indiana patients at all. *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2118 (2020), *abrogated by Dobbs*, 142 S. Ct. 2228. The Satanic Temple states it is "highly likely" that one or more Indiana Members would use the Clinic, and it also states that it has received "hundreds of inquiries from [Satanic Temple] [M]embers"; tellingly, however, it specifies no Indiana Member who has called the Clinic, not even anonymously. [Filing No. 44-1 at 6-7]; *see Common Cause Ind. v. Lawson*, 937 F.3d 944, 952 (7th Cir. 2019) (holding organizations had standing in part because diversion of resources included managing phone calls from Indiana residents). When asked whether an Indiana Member has ever received abortion-inducing drugs from the Satanic Temple, the Satanic Temple, "to the best of its knowledge," answers no, but "can neither admit," "deny," nor "vouch for" that fact. [Filing No. 50-1 at 2.]

Overall, the Satanic Temple invites a paradox of inferences. "To a reasonable degree of medical certainty," it points to statistically identified Members, which the Supreme Court forbids; yet it declines to "vouch for" specifically identified Members, which the Supreme Court requires. Such equivocal allegations fall short of overcoming a factual challenge to standing. All the Satanic Temple adds is an unidentified doctor opining on unidentified members, identifying them only through statistical probability. This, the Supreme Court has explained, simply will not do. The Satanic Temple has failed to prove by a preponderance of the evidence the facts necessary to support associational standing.[2]

---

[2] Because the Satanic Temple has not established associational standing, the Court need not and does not engage in an evaluation of potential injuries to Members that the Satanic Temple claims they actually or imminently might incur.

13

## B.     Standing for the Satanic Temple Itself

Defendants argue that the Satanic Temple does not have standing in its own right, falling short of demonstrating injury in fact, causation, and redressability.   [Filing No. 37 at 7-8.] Defendants argue that the Satanic Temple has not demonstrated injury in fact; it has failed to show "such a clinic exists or is reasonably likely to exist in the near future" and that the First Amended Complaint does not "specify where the Clinic is located, what services it performs, or where its providers are licensed." [Filing No. 37 at 7.]  Defendants further assert that the Satanic Temple has not demonstrated causation; "[e]ven before S.B. 1's enactment, both federal and state law would prohibit The Satanic Temple from providing abortion-inducing drugs by mail." [Filing No. 37 at 8-9.]  And Defendants assert that the Satanic Temple has not demonstrated redressability; even if "it had a clinic capable of supporting Indiana patients," it does not show that "anyone would use it to procure abortions that would be lawful but for S.B. 1." [Filing No. 37 at 8.]  Defendants conclude that, in contrast to the plaintiff who intended to engage in prohibited conduct in *303 Creative v. Elenis*, the Satanic Temple never intended to bring its Clinic to Indiana; if it had, it would have intended to "compl[y] with Indiana's unchallenged health and safety regulations." [Filing No. 56 at 3-4 (citing *303 Creative v. Elenis*, 600 U.S. 570, 583 (2023)).]

In response, the Satanic Temple argues that it has met the requirements of standing regarding injury in fact, causation, and redressability.  The Satanic Temple argues that it has suffered multiple injuries, including facing the threat of prosecution, expending costs to comply with S.B. 1, diverting resources to respond to S.B. 1, and being frustrated in its mission to spread the Satanic Tenets and the Satanic Abortion Ritual.  [Filing No. 44 at 9 (threat of prosecution); Filing No. 44 at 12 (cost of compliance); Filing No. 44 at 13 (diversion of resources); Filing No. 44 at 13-14 (frustration of Satanic mission)].  The Satanic Temple states that *Biden v. Nebraska* recognizes that frustrations to its mission amount to an injury in fact [Filing No. 57 at 1-3 (citing

*Biden v. Nebraska*, 143 S. Ct. 2355, 2368 (2023)].  It asserts that *303 Creative* stands for the proposition that the Satanic Temple's injury stems from the liability "inherent in providing its intended services." [Filing No. 57 at 3-4.]  The only obstacle blocking the Clinic, according to the Satanic Temple, is its fear of civil and criminal consequences.  [Filing No. 44 at 9, 13.]  As to causation and redressability, the Satanic Temple asserts that it seeks to overturn Indiana's entire abortion-law apparatus to the extent it causes the Satanic Temple's injuries.  [Filing No. 44 at 12-13; Filing No. 57 at 3.]

In reply, Defendants argue that the Satanic Temple has demonstrated no actual or imminent injury sufficient for standing.  [Filing No. 51 at 1-2.]  *Biden v. Nebraska*, the State argues, "never held that an abstract injury to an organization's purported mission constitutes injury in fact.  It focused on . . . 'a legally protected interest, like property or money.'" [Filing No. 60 at 2 (quoting *Biden*, 143 S. Ct at 2365-66).]  Defendants assert that the Clinic, based in New Mexico, "has never provided abortions to any woman in Indiana," and has only "generic allegations of an intention to provide abortions to unidentified women at some unspecified time."  [Filing No. 51 at 1-2.]  Defendants reiterate that the Satanic Temple "faces independent legal barriers to providing abortions in Indiana" under state and federal laws prohibiting unlicensed abortion clinics, prohibiting mail-order abortion drugs, and prohibiting telehealth abortions.  [Filing No. 51 at 2-3.]  And Defendants reply that the Satanic Temple's First Amended Complaint "nowhere states" that it is "challenging all medical requirements that would affect its theoretical business model, much less explains how all such health and safety requirements are allegedly invalid."  [Filing No. 51 at 3.]  With the Satanic Temple's proposed abortion model independently illegal, Defendants argue,

S.B. 1 is neither the cause of the Satanic Temple's injuries nor an appropriate target for redress. [Filing No. 51 at 3.][3]

    *1.    Injury in Fact*

Injury in fact is the "first and foremost" element of standing. *Carello*, 930 F.3d at 833 (quoting *Steel Co.*, 523 U.S. at 103). As such, this case's multiple alleged injuries are addressed first, beginning with the threat of prosecution and the cost of compliance.

    a.    <u>Threat of Prosecution and Cost of Compliance</u>

If a plaintiff "must comply with the law or face sanctions," the plaintiff can sue to enjoin the law before facing enforcement through a "pre-enforcement challenge." *Hays v. City of Urbana, Ill.*, 104 F.3d 102, 103-04 (7th Cir. 1997) (citing *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)). In a pre-enforcement challenge, a future harm amounts to injury in fact if the harm is "certainly impending," or if the harm poses a "substantial risk" of occurring, but not if the harm is merely "possible." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). To prove such a threatened injury, the plaintiff must show a "credible threat of prosecution" of conduct arguably affected with a constitutional interest, *Driehaus*, 573 U.S. at 159, and "make[] clear its intention to continue its possibly unlawful conduct," *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021). The intent to engage in possibly unlawful conduct must exceed "'some day' intentions"—those "without any description of concrete plans" or "any specification of when the some day will be." *Lujan*, 504 U.S. at 564 (emphasis omitted). Whether the plaintiff intends to engage in its possibly unlawful conduct is a question of

---

[3] Although the Satanic Temple already benefitted from a chance to submit supplemental briefing, and was warned that extraneous materials may be struck, [Filing No. 53], the Satanic Temple submitted an additional letter to the Court, this time arguing that various Indiana abortion provisions are preempted, [Filing No. 61 at 1]. Defendants have moved to strike the letter. [Filing No. 62.]. Having warned the Satanic Temple of the consequences, the Court strikes the letter.

fact.  *Younger v. Harris*, 401 U.S. 37, 42 (1971) (holding no standing for certain plaintiffs who had not "alleged that they would be prosecuted for the conduct they planned to engage in," a fact that "the District Court had [not] found.").

The Satanic Temple has no Clinic in Indiana presently: it operates no "licensed . . . abortion clinic in Indiana," employs no "physicians who are licensed to practice medicine in Indiana," and provides no "in-person services to patients" in Indiana.  [Filing No. 50-1 at 1-2.]  Likewise, the Satanic Temple plans no Clinic in Indiana prospectively: it "does not presently intend" to start an in-person abortion clinic in Indiana, and it "does not presently intend" to seek a license for an abortion clinic in Indiana.  [Filing No. 50-1 at 1-2.]

Unlike the plaintiff in *303 Creative*, who claimed an intent to follow through on her prohibited conduct, *see* 600 U.S. at 583, the Satanic Temple is far closer to plaintiffs in other cases who failed to demonstrate that they intended to do the same.  *See, e.g.*, *Ashcroft v. Mattis*, 431 U.S. 171, 172-73 & n.2 (1977) (holding no standing in moot case regarding wrongful death of one son, finding it was "speculative" that another son "might" have been in danger of wrongful death in the future due to involvement with police); *O'Shea v. Littleton*, 414 U.S. 488, 498 (1974) (holding no standing for plaintiffs who failed to "indicate that it [was] otherwise their intention" to violate the law); *Hays*, 104 F.3d at 104 (holding no standing for plaintiff landlords who failed to show they would bear the cost of compliance because they did not rent apartments falling within Section 8 ordinance); *Love Church*, 896 F.2d at 1086 (holding no standing for plaintiff church that failed to apply for a permit and was not threatened with prosecution for operating without a permit).

The Court finds that the Satanic Temple's allegations fall short of even "some day" intentions, and that it fails to meet its burden to make clear it intends to engage in conduct that is

17

unlawful under S.B. 1. Without such intent, the Satanic Temple has failed to demonstrate that its alleged cost of compliance or threat of prosecution amounts to injury in fact.

b.  Diversion of Resources

If an organization shows a "drain on the organization's resources" as a result of challenged government action, the organization can prove actual injury. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). However, "where the harm is not imminent," "[m]itigation expenses do not qualify as actual injuries." *Remijas*, 794 F.3d at 695 (citing *Clapper*, 133 S. Ct. at 1152 (holding no injury in fact for plaintiffs who "inflict[ed] harm on themselves based on their fears of hypothetical future harm that [was] not certainly impending.")). As the Court has found above, due to the Satanic Temple's own lack of intent, it faces no imminent harm from the enforcement of S.B. 1; even if the Satanic Temple had diverted its resources, it has fallen short of proving injury in fact.

c.  Frustration to the Satanic Temple's Mission

No matter how longstanding an organization's interest, and no matter how sterling an organization's qualifications, a concrete injury does not include a mere "interest in a problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (holding organization lacked standing even though organization argued it was vindicating the public interest). Nor does it include "mere indignation." *Carello*, 930 F.3d at 834 (holding plaintiff lacked standing even though plaintiff argued indignation amounted to concrete injury).

After the Court's determination that the Satanic Temple's allegations do not demonstrate injury in fact from the threat of prosecution, the cost of compliance, or the diversion of resources, all that remains is a frustration to promoting the Satanic Tenets and the Satanic Abortion Ritual – in other words – simply a "setback to the organization's abstract social interests." *Havens Realty Corp.*, 455 U.S. at 379 (citing *Sierra Club*, 405 U.S. at 739). While such a "generalized grievance"

18

may suit the "rarified atmosphere of a debating society," it does not suffice for standing. *Amns. United for Separation of Church & State, Inc.*, 454 U.S. at 470, 472 (1982); *see also Biden*, 143 S. Ct. at 2365-66 (holding standing for plaintiff that was exposed to concrete injury of millions of dollars); *Keep Chicago Livable*, 913 F.3d at 624 (holding no standing for home-sharing rights organization where home-rental ordinance "burden[ed] the organization's education and advocacy mission" but plaintiffs did not "own[] or rent[] property or otherwise engage[] in activity regulated or protected by" the ordinance); *see also Freedom from Religion Found.*, 845 F.2d at 1467 (holding no standing for advocacy organization where religious display offended the plaintiffs' religious beliefs but plaintiffs suffered only "psychological harm that result[ed] from witnessing conduct with which [they] disagreed").

In sum, the Satanic Temple's allegations fail to prove it has suffered any injury in fact. While this failure alone defeats standing, the Court goes on to consider the remaining elements of standing.

### 2.    *Causation and Redressability*

Causation and redressability are the remaining two elements of standing. A plaintiff must prove the defendant caused its injury, and it must be likely that a favorable judicial decision will redress its injury. *Lujan*, 504 U.S. at 560-61. For causation, the plaintiff need not prove proximate cause, but it still must prove a "fairly traceable" connection between the defendant's challenged conduct and the plaintiff's alleged injury. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386, 1391 n.6 (2014). The injury must not have resulted from the "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. And the injury must not have resulted from conduct or legal provisions not before the court. *See California v. Texas,* 141 S. Ct. 2104, 2119 (2021) (holding no causation in healthcare-law challenge where showing "that the minimum essential coverage requirement is unconstitutional would not show that enforcement

of any of the[] other provisions" injuring the plaintiffs was unconstitutional).  For redressability, it is often intricately linked with causation; if there is no causation, then a favorable decision directed toward the challenged conduct will not likely redress the plaintiff's injury.  That is, if "[a] plaintiff . . . would have been no better off had the defendant refrained from" the challenged acts, then the plaintiff "does not have standing." *Silha*, 807 F.3d at 174 (citation omitted).

In this case, the Satanic Temple alleges that S.B. 1 imposes the threat of prosecution, the cost of compliance, the diversion of its resources, and the frustration to promoting its mission to spread the Satanic Tenets.  Yet, as the Defendants note, other unchallenged federal law and Indiana laws would each independently prohibit the Satanic Temple from lawfully operating its mail-order abortion service.  *See, e.g.*, *Clapper*, 133 S. Ct. at 1148 (holding no causation when plaintiffs seeking an injunction of a statute authorizing surveillance could not demonstrate that government would be unlawfully surveilling them under the challenged statute, as opposed to under some other independent statute); *Int'l Union v. Johnson*, 674 F.2d 1195, 1199 (7th Cir. 1982) (holding no redressability when plaintiffs seeking an injunction of a statute allegedly barring them from receiving unemployment benefits were also independently barred from receiving unemployment benefits by another statute).[4]

---

[4] While the Satanic Temple has introduced exhibits arguing that federal law does not prevent mailing abortion-inducing drugs, that question of law is sharply contested.  *Compare* Filing No. 45-5 at 17 (Memorandum Opinion for the General Counsel of the United States Post Office: The Comstock Act does "not . . . prohibit the conveyance of articles intended for preventing conception or producing an abortion where the sender lacks the intent that those items should be used unlawfully."), *with* Filing No. 45-4 at 2 (Letter from the Missouri Attorney General on behalf of 20 state attorneys general: the Comstock Act "expressly prohibits using the mail to send or receive any drug that will 'be used or applied for producing abortion.' 18 U.S.C. § 1461.").

In addition to falling short of proving injury in fact, the Satanic Temple has failed to meet its burden of proving causation and redressability. The result is a lack of standing. The Court **GRANTS** Defendants' Motion to Dismiss the First Amended Complaint. [36.]

## IV.
### FURTHER PROCEEDINGS

"When a district court concludes that the plaintiff lacks standing—and thus that the court lacks jurisdiction—the judge may either dismiss without leave to amend or dismiss without prejudice." *Flynn*, 39 F.4th at 954 (citing *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019)). Because the Satanic Temple has already used its one amendment as of right, the decision to permit further leave to amend is committed to the Court's "broad" discretion. Fed. R. Civ. P. 15(a); *MAO-MSO Recovery II, LLC*, 935 F.3d at 586.

The Satanic Temple should have "consider[ed] carefully and promptly the wisdom of amending to meet the arguments in the motion. A responsive amendment may [have] avoid[ed] the need to decide the motion or reduce the number of issues to be decided, and . . . expedite[d] determination of issues." Fed. R. Civ. P. 15, 2009 Amendment Advisory Committee Notes. But far from expediting the determination of jurisdiction, the Satanic Temple did not use its earlier opportunity to cure its standing deficiencies. Instead, it tried to introduce nonresponsive constructive amendments, each slipped into its briefing. Although it alleged claims under RFRA, in its response brief, the Satanic Temple requested leave to "replead" its RFRA counts as First Amendment claims. [Filing No. 44 at 39.] Although it challenged only S.B. 1 in its First Amended Complaint, in its response brief, the Satanic Temple asserted that it seeks to enjoin Indiana's entire abortion-law apparatus to the extent it causes the Satanic Temple's injuries. [Filing No. 21 at 4 (First Amended Complaint); Filing No. 44 at 13 (response brief).] Then, in supplemental briefing, the Satanic Temple asserted it wanted to enjoin "any and all Indiana laws" conflicting with the

Satanic Temple's mission to provide abortion services for its Members in Indiana. [Filing No. 57 at 3.]

It is rarely appropriate to permit constructive amendments "smuggle[d]" through the briefs. *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023). Even if this were the rare appropriate case, the Satanic Temple's requests collide with its central obstacles to standing—no identified Members, and no intent to engage in unlawful conduct—abundantly clear from the Satanic Temple's own admissions of fact. [Filing No. 50-1.] Unless the Court permits withdrawal, judicial admissions are "conclusively established." Fed. R. Civ. P. 36(b). Judicial admissions are not evidence; judicial admissions "trump[] evidence"; they "ha[ve] the effect of withdrawing a fact from contention" entirely. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993) (judicial admissions trump evidence); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (judicial admissions withdraw fact from contention). These fatal flaws should have been apparent to the Satanic Temple long before the close of briefing. *See Draper*, 827 F.3d at 3 ("[W]hy the advocacy group would have needed formal discovery to identify which of its own members may have been injured by the regulation is a mystery the group leaves unsolved."). Granting leave to amend would practically produce only more briefing, which the Court has already once entertained. [Filing No. 53.]

The Satanic Temple had an opportunity to submit evidence. It had notice of its standing defects. And it was given the opportunity to cure them. It has failed on all fronts. Ultimately, the Satanic Temple has failed to prove by a preponderance of the evidence those facts essential for granting standing. Accordingly, the Court **DISMISSES** the First Amended Complaint for lack of jurisdiction without leave to amend. *See, e.g.*, *Flynn*, 39 F.4th at 950 (dismissal for lack of jurisdiction without leave to amend where plaintiffs "continued to rely on allegations and legal

argument rather than point to evidence of an actual injury"); *MAO-MSO Recovery II, LLC*, 935 F.3d at 586 (dismissal for lack of standing without leave to amend after amendment to the complaint failed to cure problem of standing).

## V.
### CONCLUSION

Based on the foregoing, the Court:

- **GRANTS** Defendants' Motion to Dismiss the First Amended Complaint, [36];

- **DISMISSES** the Satanic Temple's First Amended Complaint for lack of jurisdiction without leave to amend, [21];

- **STRIKES** the Satanic Temple's letter, [61]; and

- **DENIES** Defendants' Motion for Leave to Respond to the Satanic Temple's letter as moot, [62.]

Final judgment will enter accordingly.

Date: 10/25/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF to All Counsel of Record**