# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE SATANIC TEMPLE, | No. 24-1243 |
| *Plaintiff - Appellant,* | D.C. No. 1:22-cv-00411-DCN |
| v. | |
| RAUL LABRADOR, in his capacity as the Attorney General of Idaho; JAN M BENNETTS, in her capacity as Ada County Prosecutor; STATE OF IDAHO, | ORDER AND AMENDED OPINION |
| *Defendants - Appellees.* | |

Appeal from the United States District Court
for the District of Idaho
David C. Nye, District Judge, Presiding

Argued and Submitted March 26, 2025
Seattle, Washington

Filed August 11, 2025
Amended September 2, 2025

Before: M. Margaret McKeown, Ronald M. Gould, and
John B. Owens, Circuit Judges.

Order:
Opinion by Judge McKeown

# SUMMARY*

## Article III Standing

The panel affirmed the district court's dismissal for lack of Article III standing of an action brought by The Satanic Temple ("TST"), a religious association, challenging Idaho's laws criminalizing abortion.

The panel held that TST had not met its burden to show associational standing. TST, whose sole telehealth abortion clinic is in New Mexico, had not shown that one of its members has suffered or will imminently suffer an injury given that TST has no patients in Idaho, no doctors who are licensed to treat Idaho patients, and identified no Idaho citizen who sought an abortion from the organization.

The panel held that TST had not met its burden to show organizational standing. TST's argument that it diverted resources to open its New Mexico clinic to provide abortions in response to Idaho's and other states' abortion bans was insufficient to establish standing. The panel rejected TST's argument that its mission to promote abortions was frustrated by Idaho's law.

Because TST did not demonstrate standing, the panel did not reach the merits of TST's claims.

Although the panel agreed with the district court that TST lacked standing, it noted that dismissals for lack of jurisdiction should generally be without prejudice. Here, because the district court also rejected TST's claims on the

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

merits, it dismissed the complaint with prejudice. The panel remanded to the district court for a determination of whether TST's complaint clearly could not be saved by any amendment.

## COUNSEL

W. James Mac Naughton (argued), Newton, New Jersey; Jeremiah Hudson, Fisher & Hudson PLLC, Boise, Idaho; for Plaintiff-Appellant.

Alan M. Hurst (argued), Solicitor General; Nathan S. Downey, David A. Leroy Fellow; Michael A. Zarian, Deputy Solicitor General; Brian V. Church, Deputy Attorney General; Raul R. Labrador, Idaho Attorney General; Idaho Office of the Attorney General, Boise, Idaho; for Defendants-Appellees.

## ORDER

Appellees' motion to amend (Dkt. No. 51) is GRANTED. The opinion filed August 11, 2025, is hereby amended. The amended opinion will be filed concurrently with this order. No future petitions for rehearing or rehearing en banc will be entertained.

IT IS SO ORDERED.

## OPINION

McKEOWN, Circuit Judge:

Abortion laws have faced frequent and wide-ranging challenges from religious groups throughout the federal courts. In this appeal, we consider challenges to Idaho's laws criminalizing abortion brought by a religious association—The Satanic Temple ("TST")—that supports abortion as an exercise of personal sovereignty and bodily autonomy, two of the group's core tenets. But no matter how crucial these beliefs are to TST, "an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (internal quotation omitted). Article III standing requires demonstrating an injury in fact, causation, and redressability. *Id.* at 380. TST, whose sole clinic is in New Mexico, has no patients in Idaho, no clinic in Idaho, no doctors who are licensed to treat Idaho patients, and has identified no Idaho citizen who seeks an abortion from the organization. Because TST has not established standing, we affirm the district court's dismissal of its claims.

## Background[1]

TST is a religious association with "over 1.5 million members worldwide, including over 3,500 members in Idaho." "TST venerates, but does not worship, the allegorical Satan" as described in *Paradise Lost* as a defender of personal sovereignty. Its tenets parallel those of secular humanism and include the tenet that "[o]ne's body is

[1] This background is based on TST's complaint.

inviolable, subject to one's own will alone." TST "members believe the fetal tissue a pregnant woman carries in her uterus—from conception until viability—is part of her body and not imbued with any humanity or existence separate and apart from that of the woman herself." Consistent with this principle, members believe those who are involuntarily pregnant should get abortions, if this can be done safely, "as an exercise of their religious beliefs pursuant to the Satanic Abortion Ritual," which is primarily a ritual of positive affirmations intended to relieve any guilt or anxiety while receiving a medical or surgical abortion.

The Supreme Court dramatically changed the landscape for abortion in *Dobbs v. Jackson Women's Health Organization*, which held that the Constitution does not confer a right to abortion. 597 U.S. 215 (2022). Shortly after the decision, Idaho's Total Abortion Ban and Fetal Heartbeat Statute ("abortion laws") went into effect.[2] Idaho Code §§ 18-604 *et seq.*; 18-8801 *et seq.* These laws criminalize virtually all abortions. *See* Idaho Code § 18-8804. The laws allow for the prosecution of those who receive and those who provide abortions, and civil actions for damages.

TST challenges Idaho's abortion laws by suing the Attorney General of Idaho and the Ada County Prosecutor.[3] TST alleges it "has female TST members residing in Idaho who are or will become involuntarily pregnant." It defines an "Involuntarily Pregnant Woman" as one who "[b]ecame pregnant without her consent due to the failure of her Birth

---

[2] The Idaho Supreme Court upheld the constitutionality of both laws. *Planned Parenthood Great Nw. v. State*, 522 P.3d 1132 (Idaho 2023).

[3] TST also sued the State of Idaho, which the district court dismissed

TST also sued the State of Idaho, which the district court dismissed based on sovereign immunity. TST does not challenge that dismissal on appeal.

Control," and is a TST member. TST claims that its members received abortions before Idaho passed its new abortion laws on August 25, 2022, but now cannot, due to the criminalization provisions.

TST opened a telehealth abortion clinic ("the Clinic") in New Mexico that would provide medical abortions to Idaho TST members. TST spent over $100,000 to establish and operate the Clinic, which prescribes abortifacients and counsels TST members on the Satanic Abortion Ritual. The Clinic was not operational when TST's complaint was filed in September 2022 but became operational as of February 2023.

TST alleges the Idaho abortion laws are unconstitutional as applied to Involuntarily Pregnant TST members, claiming that Idaho's actions have: (1) created a taking of the economic value of a woman's uterus by forcing women to carry unwanted pregnancies without state compensation in violation of the Fifth Amendment; (2) subjected women forced to carry unwanted pregnancies to slavery in violation of the Thirteenth Amendment; and (3) given unconstitutional preferences to survivors of rape or incest, who are excepted from Idaho's abortion prohibitions, in violation of the Equal Protection Clause of the Fourteenth Amendment.[4] TST seeks to permanently enjoin Idaho from enforcing the laws against "Involuntarily Pregnant Women or anyone who provides an Involuntarily Pregnant Woman with an abortion[,]" as well as against TST in its provision of medical abortions in Idaho.

---

[4] TST initially brought a claim under Idaho's Exercise of Religious

PSF initially brought a claim under Idaho's Exercise of Religious Freedom Act but later consented to its dismissal, so that claim is not before the panel.

The Idaho defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted the motion, finding TST lacked both associational and organizational standing. Apart from its holding on standing, the district court also proceeded to the merits to provide additional support for dismissal, rejecting each of TST's claims. We affirm dismissal of TST's complaint on standing grounds and do not reach the merits.

## Analysis

We review de novo the dismissal for lack of Article III standing. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). We "take as true all material allegations in the complaint and construe the complaint in favor of the plaintiff." *Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022).

To establish Article III standing, TST bears the burden to demonstrate an injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury must be both "(a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotations omitted). The district court correctly found that TST lacks both associational and organizational standing to challenge Idaho's abortion laws.

## I. Associational Standing

The Supreme Court laid out the parameters of associational standing in *Friends of the Earth v. Laidlaw*: "An association has standing . . . on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the

their own right, the function at stake the germane of the organization's purpose and neither the claim asserted nor

the relief requested requires the participation of individual members . . . ." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). The first requirement sinks TST's effort to establish standing.

Remarkably, TST devotes less than ten pages of its seventy-page brief to standing, and it has not shown that even one of its members would "have standing to sue in their own right." *Id.* No specific members harmed by the laws are identified and it is unclear whether such a member exists. Instead, TST relies on a speculative chain of assumptions to argue only that it is reasonably probable that one of its members will be injured. This absence of evidence, coupled with infirm statistical inferences, does not meet Article III's standing requirements.

Despite the general requirement to name affected members, TST names no member, even by pseudonym, who would have standing to sue. *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (holding organization failed to meet standing requirement where it "[did] not identify any affected members by name nor [had] it submitted declarations by any of its members attesting to harm they have suffered or will suffer"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (requiring "specific allegations establishing that at least one identified member had suffered or would suffer harm"). Several of our sister circuits have followed *Summers* in requiring members to be named. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022) ("[W]e hold that the [organizational plaintiff] lacks associational standing to sue on behalf of unnamed members."); *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016)

(holding advocacy group lacked standing where its

complaint "did not identify any member of the group" affected by the challenged regulation).

While we have recognized that an organization need not always "identify by name the member or members injured," that flexibility may be invoked only when it is "relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *cf. Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203–04 (11th Cir. 2018) (holding political party lacked standing where it "failed to allege that a specific member will be injured," and an insufficient affidavit did not make it "certain" that a member would be injured). TST does not meet *Cegavske*'s standard of clarity here, as the harm alleged is hardly "relatively clear." 800 F.3d at 1041. And of course, *Cegavske* did not purport to modify or overrule *Summers*'s requirement to concretely allege that at least one member will be injured. *Id*.

In lieu of identifying harmed members, or even submitting Jane Doe declarations, TST submitted two declarations alleging that, based on probability, one or more individual members is at risk of harm from Idaho's laws. One declaration is from Dr. J.D., an obstetrics and gynecological osteopath, who provides scant background qualifications and apparently has no background in statistics or public health. The doctor concludes that "twenty-seven [] TST members in Idaho are Involuntarily Pregnant Women during the course of a year." In reaching this conclusion, the doctor relies on the following construct of statistic piled upon statistic: the Idaho fertility rate in 2021 was 60.7 per

1,000 women; the Idaho induced abortion rate in 2021 was

5.4 induced abortions per 1,000 women; and the national rate

of unintended pregnancy due to failure of birth control is 48%. These numbers are then applied to the 1,750 women of child-bearing age in Idaho who are TST members. From this, Dr. J.D. provides an "opinion, to a reasonable degree of medical probability, that twenty-seven (27) TST members in Idaho are Involuntarily Pregnant Women during the course of a year." Dr. J.D. does not offer an opinion on how many of these TST members would likely seek an abortion.

This estimate, and the causal chain required to reach it, are too attenuated and speculative to confer standing. These twenty-seven involuntarily pregnant TST members may, or may not, exist. Not only are the cited statewide fertility rates several years out of date, but it is also unclear that any of the relevant rates—the Idaho fertility rate, the Idaho induced abortion rate, or the national rate of unintended pregnancies due to failure of birth control—is an appropriate proxy for those rates among Idaho TST members specifically. Nor is there any evidence or opinion provided that one or more of these hypothetical involuntarily pregnant TST members would want to seek an abortion, notwithstanding that it is a tenet of TST's belief system. The absence of any evidence on this last point is, in itself, fatal to the causal chain. Even assuming the rates applied are apposite, given the nature of probabilities, there still may be *no* involuntarily pregnant Idaho TST member seeking an abortion. This long chain of speculation cannot confer standing.

TST argues that the district court erred in rejecting Dr. J.D.'s opinion without a *Daubert* hearing per the court's duty to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589

(1993). However, this duty "does not require the court to hold a separate *Daubert* hearing." *United States v.*

*Jawara*, 474 F.3d 565, 582 (9th Cir. 2007). Here, Dr. J.D.'s declaration does not even suggest that Dr. J.D. is a statistician or public health expert who has "scientific, technical, or other specialized knowledge" to qualify as an expert witness expressing an opinion based on statistics, making it reasonable for the district court to have assessed expertise without a separate hearing. Fed. R. Evid. 702. Thus, any "lack of an explicit finding [regarding] reliability was harmless." *Jawara*, 474 F.3d at 583.

Further, the district court considered rather than excluded the declaration and concluded—as we do—that it is insufficient to establish an injury in fact, because the doctor never asserts that a TST member will become involuntarily pregnant and wish to seek an abortion. The declaration's deficiency does not hinge on expert qualification, but rather the uncertainty inherent in averages, which is why the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities." *Summers*, 555 U.S. at 498–99. Just as in *Summers*, here, "[w]hile it is certainly possible—perhaps even likely—that one individual will meet all of the[] criteria" necessary to assert an injury, "that speculation does not suffice." *Id.* at 499.

The other declaration, by the TST Executive Director responsible for the Clinic, is even more speculative and deficient. Regarding harm to TST Idaho members, the declaration states only that there have been hundreds of inquiries to the Clinic and "[g]iven this enthusiastic reception by TST members, it is highly likely that one or more [] TST members in Idaho would use the unique services of the TST Clinic but for the Idaho Abortion Bans."

But clinic inquiries from unspecified states do not make it "relatively clear" that a TST member in Idaho would want

to imminently use the Clinic's services. This declaration is insufficient to allege an injury in fact.

Both declarations fall in the classic bucket described in *Lujan*: they do not demonstrate concrete, imminent harms but rather conjectural or hypothetical ones. *Lujan*, 504 U.S. at 560. Taking the declarations as true, as we must, *Yellen*, 34 F.4th at 849, they allege at best the potential for harm, which is insufficient to demonstrate an injury in fact. Because TST has not shown that one of its members has suffered or will imminently suffer an injury, it has not met the burden to establish associational standing.

## II. Organizational Standing

TST has also not shown that it has standing as an organization. TST argues it has standing as a prescriber of abortifacients, as well as because it funneled significant resources to the Clinic and the Idaho laws have frustrated its organizational mission. Neither theory confers standing.

### A. Prescriber Theory

TST's Clinic does not presently prescribe abortifacients to TST Idaho members but asserts it would if it could "lawfully do so." However, TST can hardly claim injury as a prescriber because, even absent the challenged laws, it cannot legally prescribe abortifacients in Idaho: Idaho law allows only licensed physicians to prescribe abortifacients, whereas the Clinic employs only nurse practitioners, not licensed Idaho doctors. Idaho Code §§ 18-617, 18-604(12). TST does not challenge this law and has not demonstrated concrete plans to hire doctors in Idaho,[5] alleging only that it

_____

[5] TST raises, for the first time on appeal, that Dr. J.D., licensed in Idaho

FSV raises for the first time on appeal that Dr. J.D., licensed in Idaho, could prescribe abortifacients, but raising this argument in an appellate brief is too late to serve as evidence of standing. *O'Bannon v. Nat'l*

could pay $300 to license its nurse practitioners in Idaho.[6]
This wishful-thinking allegation is insufficient: "Such 'some
day' intentions—without any description of concrete plans,
or indeed even any specification of *when* the some day will
be—do not support a finding of the 'actual or imminent'
injury that our cases require." *Lujan*, 504 U.S. at 564
(emphasis in original). *See also Gonzalez v. U.S. Immigr. &
Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) ("[W]e
assess [a plaintiff]'s standing for prospective injunctive
relief as of the time when he commenced suit, relying on the
allegations in the operative amended complaint."); § 3531
*Standing—In General*, 13A Fed. Prac. & Proc. § 3531 (3d
ed.) (generally, standing must exist when the action is filed).

Finally, as with its associational argument, TST has not
identified any person in Idaho seeking to use the Clinic's
services to receive abortifacients.     As the district court
summarized:

---

*Collegiate Athletic Ass'n*, 802 F.3d 1049, 1067 n.11 (9th Cir. 2015)
(disregarding challenge to standing raised in a brief because
"[s]tatements in appellate briefs are not evidence"). Notably, Dr. J.D.'s
declaration did not list Idaho as a state of licensure or employment, nor
any association with TST other than as an expert. TST's Clinic operates
only in New Mexico and requires those receiving abortifacients to have
their telemedicine consult in New Mexico and the drugs delivered to an
address in that state.

[6] Even if TST licensed its nurse practitioners in Idaho, this licensing
would not transform them into physicians who can prescribe
abortifacients. *See* Idaho Code § 18-617. Though TST argues that the
FDA's "risk evaluation and mitigation strategy" (REMS) for
abortifacients allows nurse practitioners to prescribe abortifacients even
if they are not licensed in the state, it is unclear whether REMS would

if they are not licensed in the state, it is unclear whether REMS would preempt the Idaho state law, as TST had argued to the district court but does not raise on appeal.

No injury will occur to TST unless: (1) TST's providers become licensed in Idaho—a necessary step that neither TST nor any of its declarants allege is underway or even planned; (2) a TST member in Idaho becomes "involuntarily pregnant" due to failed birth control; (3) that member chooses to abort her child; and (4) that member selects the Clinic to help perform the abortion, rather than some other abortion provider.

Because TST has not demonstrated that any of these steps have occurred or are imminent, let alone all four, it cannot assert an injury as a prescriber of abortifacients.

## B. Resources and Mission Theory

It also does not suffice that TST expended resources on opening the Clinic and that its mission to promote abortion was frustrated. The Supreme Court clarified and limited the resources theory of organizational standing in *Alliance for Hippocratic Medicine*. 602 U.S. 367. In denying organizational standing to plaintiffs opposed to abortion who challenged the FDA's relaxed regulatory requirements for the abortifacient mifepristone, the Court explained:

The medical associations respond that under *Havens Realty Corp. v. Coleman*, standing exists when an organization diverts its resources in response to a defendant's actions . . . . That is incorrect. Indeed, that theory would mean that all the organizations

in America would have standing to challenge
almost every federal policy that they dislike,

> provided they spend a single dollar opposing
> those policies. *Havens* does not support such
> an expansive theory of standing.

*Id.* at 395. The Court noted that *Havens* concerned a direct
effect on the organization's core activities, which the anti-
abortion associations had not shown, and which TST has not
sufficiently alleged here. *Id.*

Even before *Alliance for Hippocratic Medicine*, we held
that an organization "cannot manufacture the injury by
incurring litigation costs or simply choosing to spend money
fixing a problem that otherwise would not affect the
organization at all." *La Asociacion de Trabajadores de Lake
Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.
2010). That precedent is informative here. While limits on
abortion may have always been of concern to TST, the
organizational resources it spent attempting to *provide*
abortions by opening the Clinic were spent, by its own
admission, "in response to the bans on abortion in Idaho and
other states." Indeed, the Clinic only became operational on
February 14, 2023, even though TST's initial complaint was
filed on September 30, 2022, and its first amended complaint
on December 13, 2022.

To the extent that TST's pre-existing core mission is to
promote abortion, the Idaho statutes at issue do not curtail
TST's ability to support its members' beliefs or provide
information or advocacy on abortion. *See All. for
Hippocratic Med.*, 602 U.S. at 394 ("A plaintiff must show
far more than simply a setback to the organization's abstract
social interests.") (internal quotations and citations omitted).
Indeed, TST states that "[p]rior to opening the Clinic, [its]

programs were focused on education and advocacy, not the practice of medicine and TST has not alleged that those

activities have been impeded or stopped, only that resources were diverted from them to the Clinic—a theory that does not confer standing. *See id.* at 395–96. The challenged statutes only criminalize abortion itself, and TST is still not set up to provide abortion services in Idaho. Thus, TST cannot establish standing based on a diversion of resources and frustration of mission theory.

## Conclusion

TST's concern for its members is evident—but it still bears the burden to demonstrate an injury in fact. TST has not demonstrated standing, so we do not reach the merits. *See, e.g., All. for Hippocratic Med.*, 602 U.S. at 378 ("Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'") (reversing and remanding based on lack of standing without reviewing merits decision below); § 3531 *Standing—In General*, 13A Fed. Prac. & Proc. § 3531 (3d ed.) ("Standing doctrines are employed to refuse to determine the merits of a legal claim.").

We agree with the district court that TST lacked standing. However, because the district court also rejected TST's claims on the merits, it dismissed the complaint with prejudice. Dismissal with prejudice "is improper unless it is 'clear' that 'the complaint could not be saved by any amendment.'" *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (internal citation omitted); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (noting dismissal for lack of jurisdiction should generally be without prejudice and altering dismissal for lack of standing to be without prejudice). We remand to the district court for its determination whether TST's complaint "clear[ly]

its determination whether TST's complaint clear[ly] could not be saved by any amendment.

*Amgen*, 573 F.3d at 737.  Of course, we take no position on this issue.   We therefore affirm dismissal on standing grounds and remand with instructions.

**AFFIRMED** **and** **REMANDED** **WITH** **INSTRUCTIONS.**